COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Willis and
          Senior Judge Overton
Argued at Alexandria, Virginia


KUREBIA MARIE HAMPTON
                                        OPINION BY
v.   Record No. 0597-00-4       JUDGE JERE M. H. WILLIS, JR.
                                      FEBRUARY 27, 2001
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                 Herman A. Whisenant, Jr., Judge

         William J. Baker for appellant.

         Kathleen B. Martin, Assistant Attorney
         General (Mark L. Earley, Attorney General, on
         brief), for appellee.


     On appeal from her conviction of second-degree murder, in

violation of Code § 18.2-32, Kurebia Marie Hampton contends that

the trial court erroneously (1) granted Instruction 5 on

"concert of action," (2) granted Instruction 9 on the use of a

"deadly weapon," (3) granted Instruction 15 on causation, and

(4) refused her proposed Instruction B defining lesser-included

offenses of malicious wounding and assault and battery.  We find

no error and affirm the judgment of the trial court.

                         I.   BACKGROUND

     On June 29, 1999, Mary Ann Giles, accompanied by her niece,

Natalie Giles Davis, and several children, drove through a

residential area of Prince William County on their way to

church.  They came upon a car that was stopped in the street blocking their passage.  The driver of the car was Lisa Dixon. Hampton was a passenger.  Lisa Dixon's sister, Julia, and two cousins, Erica and Teresa Dixon, were standing in the street by the car.  Ms. Giles blew her horn, and the young women became hostile.

Lisa Dixon walked over to Ms. Giles' car and asked, "What's the problem?"  Ms. Giles asked her to move her car.  Lisa Dixon replied, "Suppose I don't want to move my car," and cursed Ms. Giles.  Ms. Giles said that she did not want any trouble, and she asked if the young women standing around the car would move so she could pass.  Eventually, they moved and Ms. Giles drove by them.  Ms. Davis, who was seated in the rear of Ms. Giles' car, exchanged words with the group of young women.  She said, "Don't be disrespecting my aunt.  I live around here and I'll be back."

Ms. Giles traveled about a block and one-half when Lisa Dixon's car passed her and came to a sudden stop in front of her, causing her to stop.  Lisa Dixon exited her car and approached Ms. Giles, called her a "bitch" and told her to get out of the car.  Ms. Giles again stated that she did not want any trouble.

Hampton exited the Dixon car and approached Ms. Giles' car. Ms. Davis exited Ms. Giles' car.  Hampton and Ms. Davis walked toward the curb and began to fight.

-

Ms. Davis fell to the ground. Hampton went down on top of her. She grabbed Ms. Davis' head and banged it against the sidewalk curb several times. Hampton then got up and repeatedly kicked Ms. Davis in the abdomen.

Teresa Dixon came over and kicked Ms. Davis in the head several times. Hampton and the other young women then left in Lisa Dixon's car. Ms. Davis was taken to the hospital where she died several days later.

At trial, Dr. Frances Patricia Field, who performed an autopsy on Ms. Davis' body, testified that the cause of death was "[b]lunt force trauma to the head." Dr. Field testified that the bruising of the victim's brain, which ultimately caused her death, could have been caused by blows to either the left or the right side of the head, but that it was more likely that the blows had been to the left side.

Hampton testified that Ms. Davis initiated the fight and that Ms. Davis fell against the curb during the fight. Hampton claimed that she kicked Ms. Davis on the right jaw. She stated that two seconds later, Teresa Dixon kicked and stomped Ms. Davis on the left side of her face and head. She denied asking Teresa Dixon to help her in the fight.

At the conclusion of the trial, Hampton was convicted of second-degree murder, and this appeal followed.

-

## II. JURY INSTRUCTIONS

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). "'Both the Commonwealth and the defendant are entitled to appropriate instructions to the jury of the law applicable to each version of the case, provided such instructions are based upon the evidence adduced.'" Stewart v. Commonwealth, 10 Va. App. 563, 570, 394 S.E.2d 509, 514 (1990) (quoting Simms v. Commonwealth, 2 Va. App. 614, 616, 346 S.E.2d 734, 735 (1986)). The evidence relied on to support an instruction must amount to "more than a scintilla." Morse v. Commonwealth, 17 Va. App. 627, 633, 440 S.E.2d 145, 149 (1994) (citation omitted). In determining whether the evidence warranted a particular instruction, we view the evidence in the light most favorable to the party offering the instruction. See Foster v. Commonwealth, 13 Va. App. 380, 383, 412 S.E.2d 198, 200 (1991).

### A. INSTRUCTION 5: "CONCERT OF ACTION"

Over Hampton's objection, the trial court instructed the jury:

-

INSTRUCTION NO. 5

> If there is concert of action with the
> resulting crime one of its incidental
> probable consequences, then whether such
> crime was originally contemplated or not,
> all who participate in any way in bringing
> it about are equally answerable and bound by
> the acts of every other person connected
> with the consummation of such resulting
> crime.

"Concerted action is defined as '[a]ction that has been planned, arranged, adjusted, agreed on and settled between parties acting together pursuant to some design or scheme.'" Rollston v. Commonwealth, 11 Va. App. 535, 542, 399 S.E.2d 823, 827 (1991). "All participants in such planned enterprises may be held accountable for incidental crimes committed by another participant during the enterprise even though not originally or specifically designed." Berkeley v. Commonwealth, 19 Va. App. 279, 283, 451 S.E.2d 41, 43 (1994).

Hampton contends that the evidence did not support a "concert of action" instruction. She argues that the evidence failed to prove that she encouraged or requested Teresa Dixon to kick the victim. Therefore, she argues, she could not have participated in a "concert of action" with Teresa Dixon.

When two or more persons act together or "in concert," they are jointly liable for their conduct as confederates "connected with the consummation of the resulting crime." Ascher v. Commonwealth, 12 Va. App. 1105, 1128, 408 S.E.2d 906, 920 (1991). The evidence supports a finding that Hampton and Teresa

-

Dixon acted in concert.  Together, they were a part of the group that blocked the road, causing the initial confrontation. Together, they pursued Ms. Giles' car and its occupants, causing the car to stop and reviving the confrontation.  Together, they assaulted the victim.  The murder was an incidental, probable consequence of their concerted actions.  Therefore, the trial court did not err when it instructed the jury on "concert of action."

### B.  INSTRUCTION 9:  "DEADLY WEAPON"

Over Hampton's objection, the trial court instructed the jury:

INSTRUCTION NO. 9

You may infer malice from the deliberate use of a deadly weapon unless, from all the evidence, you have a reasonable doubt as to whether malice existed.

A "deadly weapon" is any object or instrument, not part of the human body, that is likely to cause death or great bodily injury because of the manner and under the circumstances in which it is used.

Hampton contends that a sidewalk curb cannot be a "deadly weapon."

The parties have cited no Virginia authority, and we have found none, addressing the question whether a sidewalk curb may be used as a "deadly weapon."  However, in Pannill v. Commonwealth, 185 Va. 244, 254, 38 S.E.2d 457, 462 (1946), the Supreme Court said:

-

> "A deadly weapon is one which is likely to
> produce death or great bodily injury from
> the manner in which it is used, and whether
> a weapon is to be regarded as deadly often
> depends more on the manner in which it has
> been used than on its intrinsic character."

Id. (quoting 40 C.J.S. Homicide § 25).

This definition is broad enough to include a sidewalk curb. Because a sidewalk curb has the potential to inflict death or great bodily injury, it may, when so used, be deemed a "deadly weapon."[1]

Ms. Davis did not merely fall to the street, incidentally striking her head.  Hampton did not simply throw Ms. Davis down. Rather, Hampton employed the concrete curb as a device against which she bashed Ms. Davis' head.  Thus, she employed the curb as an implement or weapon with which to inflict injury upon Ms. Davis.[2]

---

[1] Our decision is in accordance with other jurisdictions, which have considered whether a stationary object may be a weapon.  See United States v. Murphy, 35 F.3d 143, 147 (4th Cir. 1994), cert. denied, 513 U.S. 1135 (1995) (steel cell bars); People v. Galvin, 481 N.E.2d 565 (N.Y. 1985) (sidewalk); People v. Coe, 564 N.Y.S.2d 255 (N.Y. App. Div. 1990) (plate-glass window); People v. O'Hagan, 574 N.Y.S.2d 198 (N.Y. App. Div. 1991) (cell bars); State v. Brinson, 448 S.E.2d 822 (N.C. 1994) (cell bars and floor); State v. Reed, 790 P.2d 551 (Or. Ct. App. 1990) (sidewalk).  But see Edwards v. United States, 583 A.2d 661 (D.C. 1990) (bathroom fixtures); State v. Legendre, 362 So.2d 570 (La. 1978) (concrete parking lot).

[2] "'Whether the pitcher hits the stone or the stone hits the pitcher, it will be bad for the pitcher.'"  Reed, 790 P.2d at 552 (quoting Cervantes, Don Quixote, Part II, ch. 43 (1615)).

-

"Generally, unless a weapon is per se a deadly one, the fact finder should determine whether it, and the manner of its use, place it in that category, and the burden of showing these things is upon the Commonwealth." Pritchett v. Commonwealth, 219 Va. 927, 929, 252 S.E.2d 352, 353 (1979) (citations omitted). Instruction 9 defined "deadly weapon" in accordance with Virginia law. The evidence permitted the jury to conclude that Hampton used the sidewalk curb as a "deadly weapon." Therefore, the trial court did not err in granting Instruction 9 on the use of a "deadly weapon."

C. INSTRUCTION 15: CAUSATION

Over Hampton's objection, the trial court instructed the jury:

INSTRUCTION NO. 15

When a defendant inflicts an injury to the victim, the defendant is criminally responsible for the victim's death when that death was caused by the injury indirectly through a chain of natural effects and causes.

An intervening event, even if a cause of death, does not exempt the defendant from responsibility when that event was put into operation by the defendant's initial criminal acts.

The evidence supported the giving of Instruction 15. Although Ms. Davis died from "[b]lunt force trauma to the head," Dr. Field could not determine whether Hampton or Teresa Dixon inflicted the fatal blow. Therefore, the Commonwealth relied on

-

a concert of action theory. Under this theory, even though the jury may have believed that Teresa Dixon's kicking actually caused Ms. Davis' death, if it further found beyond a reasonable doubt that Hampton's launching the attack and striking Ms. Davis' head on the sidewalk initiated a "chain of natural effects and causes," which culminated in the lethal kicking and Ms. Davis' death, it could properly charge Hampton with responsibility for the fatal kick. Instruction 15 properly addressed that theory of the case.

### D. INSTRUCTION B: LESSER-INCLUDED OFFENSES

Over Hampton's objection, the trial court refused Instruction B, as follows:

INSTRUCTION NO. B

If you are not convinced beyond a reasonable doubt that the Defendant's actions resulted in the death of Natalie Giles Davis but you are convinced beyond a reasonable doubt:

(1) That the Defendant wounded; Natalie Giles Davis and

(2) That such wounding was with intent to maim, disfigure, disable or kill Natalie Giles Davis and

(3) That the act was done with malice.

If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the offense as charged, then you shall find the defendant guilty [of] Malicious Wounding;

If you find from the evidence that the Commonwealth has proven beyond a reasonable

-

doubt each of the first two elements of the
offense as charged, but that the act was
done unlawfully, and not maliciously, then
you shall find the Defendant guilty of
unlawful wounding;

If you find that the Commonwealth has
failed to prove beyond a reasonable doubt
either malicious wounding; or unlawful
wounding; but you do find beyond a
reasonable doubt;

(1)  That the Defendant inflicted some
bodily hurt on Natalie Giles Davis
and

(2)  That the act was done in an angry,
rude or vengeful manner;

then you shall find the Defendant guilty of
assault and battery[;]

If you find that the Commonwealth has
failed to prove beyond a reasonable doubt
any of the above offenses then you shall
find the Defendant not guilty.

Citing Kauffmann v. Commonwealth, 8 Va. App. 400, 382

S.E.2d 279 (1989),[3] Hampton contends that the evidence supported

the giving of the foregoing instruction, defining the

lesser-included offenses of malicious wounding, unlawful

wounding, and assault and battery.  She argues that if the jury

was not convinced beyond a reasonable doubt that she either

directly, or through concerted action with Teresa Dixon,

inflicted the lethal blow, she could, at most, have been found

---

[3] Kauffmann does not address whether malicious wounding is a
lesser offense included within homicide.  As relevant to this
case, it stands only for the proposition that an accused is
entitled to instructions on lesser-included offenses supported
by the evidence.

-

guilty under the murder indictment of one of those lesser offenses.  Thus, she argues, she was entitled to have those offenses presented to the jury through the tendered instruction.  We disagree.

To support a conviction for murder or manslaughter, the evidence must establish that a death occurred.  Malicious wounding requires proof of no such element.  The required elements to establish malicious wounding are a malicious shooting, stabbing, cutting or wounding or bodily injury by any other means with the intent to maim, disfigure, disable or kill.  See Code § 18.2-51.  The intent to maim, disfigure, disable or kill is not necessarily included in the definition of murder or manslaughter.  Each crime contains an element not contained in the other.  Thus, malicious wounding is not a lesser-included offense embraced within the crime of murder or manslaughter.  Furthermore, an indictment charging Hampton with malicious wounding was nolle prossed.  Thus, that accusation was not on trial.  Its elements and the sufficiency of the evidence to prove those elements were not matters before the jury.

Hampton argues that the jury could have found that the Commonwealth failed to prove beyond a reasonable doubt that the lethal blow and the victim's death were chargeable to her.  Under those circumstances, she argues, she could have been convicted of no more than malicious wounding, unlawful wounding or assault and battery.  She argues that the refusal of her

-

proffered instruction denied her the benefit of suffering conviction of a lesser offense than homicide.  She overlooks the totality of the trial court's instructions, particularly Instruction No. 6.  This instruction, which defined for the jury the crimes of first-degree murder, second-degree murder, and voluntary manslaughter, all requiring as necessary elements proof that Hampton was chargeable with the lethal blow, concluded by admonishing the jury that if the Commonwealth failed to prove any of the elements of those three offenses, they should find Hampton not guilty.  Thus, under the trial court's instructions, if the jury found that the Commonwealth failed to prove that Hampton was chargeable with the lethal blow, the jury would have found her not guilty.  Thus, refusal of Instruction No. B denied Hampton no benefit to which she was entitled.

    The judgment of the trial court is affirmed.

<u>Affirmed.</u>

-