COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Bumgardner and Kelsey
Argued at Alexandria, Virginia


AHMER SHAIKH

MEMORANDUM OPINION[*] BY

v.        Record No. 2614-03-4        JUDGE D. ARTHUR KELSEY
                                       JANUARY 25, 2005

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David T. Stitt, Judge

James G. Connell, III (Devine & Connell, P.L.C., on briefs), for
appellant.

Virginia B. Theisen, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


A jury convicted the appellant, Ahmer Shaikh, of second-degree murder for participating

with another in the beating and stabbing death of Zahid Ali.  On appeal, Shaikh claims the trial

court erred by (a) dismissing two veniremen from the jury panel, and (b) failing to give the jury a

separate definitional instruction to amplify the standard concert of action instruction.  We find

neither ground sufficient to warrant a reversal of Shaikh's conviction.

I.

Zahid Ali died of injuries received during an attack by Shaikh and Faisal Rehman,

Shaikh's brother-in-law.  Zahid had been having an affair with Humaira, Rehman's wife and

Shaikh's sister.  The family found out about the adulterous relationship and expressed their angry

disapproval.  Zahid went to the family's apartment (where Shaikh, his younger brother, and his

sister and husband, all lived with Shaikh's father) to discuss the situation with Humaira's father.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

When Zahid arrived, the younger brother called Shaikh on his cell phone. Minutes later, Shaikh arrived at the house to find Zahid sitting on the couch. Family members had to restrain Shaikh. Rehman then came into the room with a knife and began stabbing Zahid. Breaking free from his relatives, Shaikh joined in the attack by hitting Zahid in the head with a stick. Humaira returned to the living room and found Zahid against a wall covered in blood. Humaira tried to cover Zahid's head wounds with a scarf as Shaikh and Rehman continued to attack him. Zahid dove off a second-story balcony to escape his attackers. Shaikh then grabbed the knife, threw it in a pot of water, and then called 911 with a false report of an unknown intruder who "came into our house and attacked us with a knife." Zahid died later from the multiple stab wounds to his head, neck, and upper body.

Shaikh was tried by a jury for Zahid's murder. During the jury selection process, the trial court began with a panel of twenty-three prospective jurors. In its preliminary questions, the court asked whether anyone was "a party to a case that's set for trial during this jury term?" Panel member Steven Mastric said he was scheduled to be in court the next morning for the disposition of a marijuana possession charge to which he previously pled guilty. Mastric was unsure what to expect, as he had failed a urine test but was contesting the results. The last hearing, Mastric recalled, lasted about an hour and a half. Given this "logistical problem" and that Mastric was "contesting something with the prosecutor's office," the trial court excused Mastric from the venire.

The court also asked whether any panel member had a problem "understanding the English language . . . that might impair your ability to sit on the trial of this case." Ahmad Siam indicated that he can "understand like ninety percent. Some heavy words, I don't understand." There had already been words used by the counsel and the judge, Siam said, that he did not fully understand. Though he used English in daily life, Siam relied on his children to translate

unfamiliar words. The court accepted Siam's responses as "candid" and dismissed him from the venire due to his lack of proficiency in English.

At the conclusion of *voir dire*, the court empanelled twelve jurors and one alternate. "This panel is acceptable, Judge," Shaikh's counsel noted. The Commonwealth then put on its evidence. Prior to the commencement of the defense case in chief, the trial judge asked counsel if they had agreed on a final set of jury instructions. They advised the court that they had agreed on all but one, the instruction on "concert of action." The Commonwealth proposed the model jury instruction, which stated:

> The court instructs the jury that if there is concert of action with the resulting crime one of its incidental probable consequences, then whether such crime was originally contemplated or not, all who participate in any way in bringing it about are equally answerable and bound by the acts of every other person connected with the consummation of such resulting crime.

1 Virginia Model Jury Instructions, Criminal, No. 3.160, at I-75 (1998).

Shaikh claimed the model instruction was accurate, but incomplete. He proposed that the court use Instruction R, which relied upon specific definitions of the concert of action concept used in Virginia appellate opinions. The prosecutor objected to Instruction R because "it leaves out some relevant language . . . some pretty important things too, and that's the problem with this." "If we are going to start putting in the language," the prosecutor added, "I guess we've got to put in all of it."

The trial court record, however, does not include Instruction R. The only mention of its text appears in counsel's oral argument: "And you can see the words there, 'Concert of action is an action that's been planned, arranged, adjusted, agreed on or settled between the parties acting together . . .' *etcetera*." The remainder of the Instruction R — the *etcetera* portion — does not appear in the record.

The trial judge rejected Instruction R, noting that "in case after case, the appellate courts have cautioned against pulling language out of particular cases."  The judge also found Instruction R was itself incomplete given the absence of the caveat noted by the prosecutor.  After the court ruled, Shaikh's counsel asked to be reheard on the subject.  In response, the prosecutor said he would withdraw his objection to Instruction R if he and Shaikh could agree on including additional language addressing his caveat.  The trial court agreed, in principle, to give the proposed instruction with an agreed-upon edit.  Later, when counsel could not agree with the final text of the proposed instruction, the trial judge directed counsel to provide him with case authorities in support of their respective positions.

After the close of all the evidence, the court again heard arguments concerning the concert of action issue.  Shaikh's counsel requested that the court issue a "compromise" version of Instruction R, arguing that it had been rewritten to balance both sides' views of the definitional limits of the concert of action concept.  The prosecutor objected because Shaikh's counsel "culled" from appellate court opinions language that might "mislead this jury to think that there has to be some level of concrete agreement or settling -- and I don't even know what settling is supposed to mean really -- that is not required."  The trial court rejected the "compromise" version of Instruction R.  Like the original proposal, the "compromise" version nowhere appears in the trial court record.

After the jurors retired to deliberate, they passed to the court a written question asking whether the concert of action instruction should be read in conjunction with the instruction defining a principal in the second degree.  At the suggestion of Shaikh's counsel, the court advised the jury to follow the instructions as written.

II.

Convicted by the jury of second-degree murder, Shaikh appeals on two grounds. He first claims the court erred in excusing for cause veniremen Mastric and Siam. He also contends the court erred by not using Instruction R or the "compromise" instruction later offered.

### A. DISMISSAL OF VENIREMEN MASTRIC AND SIAM

Whether to excuse a prospective juror for cause presents a question uniquely addressed to the trial judge's sound discretion. As has been often said,

> because the trial judge has the opportunity, which we lack, to observe and evaluate the apparent sincerity, conscientiousness, intelligence, and demeanor of prospective jurors first hand, the trial court's exercise of judicial discretion in deciding challenges for cause will be not disturbed on appeal, unless manifest error appears in the record.

Jackson v. Commonwealth, 267 Va. 178, 191, 590 S.E.2d 520, 527 (2004) (citations omitted), cert. denied, 125 S. Ct. 168 (2004). "Absent manifest error, we will not disturb the trial court's judgment whether to strike a potential juror for cause." Jackson v. Commonwealth, 266 Va. 423, 435, 587 S.E.2d 532, 542 (2003). The same appellate deference applies when the trial court addresses the juror's qualifications *sua sponte*. See Rule 3A:14(b) (authorizing the trial court "on its own motion" to dismiss jurors for cause).

In this case, the trial court committed no error (much less manifest error) in excusing Mastric and Siam from the venire. The court had the discretion to remove any venireman who might be "prevented from or impaired in performing the duties of a juror" during the trial. Green v. Commonwealth, 262 Va. 105, 115, 546 S.E.2d 446, 451 (2001). Mastric was scheduled to be in criminal court the next day to be sentenced on a drug charge. Thus, for day two of what turned out to be a four-day trial, Mastric would either be late or in jail. Though Siam had no such scheduling problems, he presented the intolerable risk of sitting through the entire trial and

not understanding 10% of the words spoken. By his own admission, he could not even comprehend some of the questions being asked during *voir dire*.[1]

Shaikh claims <u>Mason v. Commonwealth</u>, 255 Va. 505, 498 S.E.2d 921 (1998), requires that we reverse the trial judge's decision to excuse Siam for lacking English fluency. Like Siam, the juror in <u>Mason</u> relied on English only as a second language. The juror in <u>Mason</u>, however, "understood *all* the trial court's questions" and "had a sufficient level of understanding of the English language which permitted her to participate *fully* in the jury deliberations." <u>Id.</u> at 510, 498 S.E.2d at 924 (emphasis added). Neither observation could be made of Siam's ability to comprehend what was being said in the courtroom.

A more basic analytical flaw underlies Shaikh's reliance on <u>Mason</u>. The issue on appeal in that case was whether the trial court abused its discretion by *retaining* a juror. Here, the issue is whether the trial court erred by *releasing* a juror. The discretionary power to retain a juror in one case does not necessarily negate the power to release a similar juror in another. By its very nature, the abuse-of-discretion standard of review recognizes that reasonable jurists can and do differ on such things. One trial judge's decision to do something within his discretion does not mean another judge, faced with similar circumstances, necessarily acts outside his discretion by *not doing it*. <u>Mason</u> thus does not stand for the proposition that a trial court errs as a matter of law whenever it excuses a prospective juror for having less than perfect English proficiency.[2]

---

[1] <u>See</u>, <u>e.g.</u>, <u>United States v. Rioux</u>, 97 F.3d 648, 659 (2d Cir. 1996) ("The requirement that jurors speak English is unquestionably reasonable."); <u>United States v. Speer</u>, 30 F.3d 605, 611 (5th Cir. 1994) (upholding trial court's dismissal of juror based on "her inability to understand or communicate effectively in English"); <u>United States v. Benmuhar</u>, 658 F.2d 14, 18-20 (1st Cir. 1981) (noting Sixth Amendment permits an English language requirement for jurors).

[2] Because we hold the trial court did not err in excusing Mastric and Siam, we need not address whether Shaikh's appeal on this issue would nonetheless run aground on harmless error principles. <u>See</u> <u>Blakey v. Commonwealth</u>, 182 Va. 614, 622-23, 29 S.E.2d 863, 866 (1944) (holding that the dismissal of a qualified venireman does not constitute "reversible error when

B. CONCERT OF ACTION INSTRUCTION

On appeal, Shaikh argues that the "trial court erred by refusing to give Instruction R or the compromise instruction." The prosecution objected to both instructions, claiming the first was incomplete and the second misleading. The trial court agreed to give a definitional instruction on concert of action, but rejected the wording of both proposals offered by Shaikh. Neither instruction, however, appears in the record. We cannot pass judgment on the accuracy of the disputed wording of either instruction without knowing precisely what each said.

Under settled principles, "the circuit court's judgment is presumptively correct and the burden is on the appellant to present a sufficient record to permit a determination whether the circuit court committed an alleged error." Commonwealth v. Williams, 262 Va. 661, 669, 553 S.E.2d 760, 764 (2001).[3] We cannot rely on the appellant's "petition or brief," Oliver v. Commonwealth, 35 Va. App. 286, 296-97, 544 S.E.2d 870, 875 (2001) (citation omitted), or

another competent and qualified juror is selected in the stead of one so excluded and discharged"); Wessells v. Commonwealth, 164 Va. 664, 668, 180 S.E. 419, 420 (1935) ("It is error, where a juror on his *voir dire* is discharged when he should have been accepted, but this error is cured if his place is afterwards filled by one who is also competent."); Seymour v. Commonwealth, 133 Va. 775, 786, 112 S.E. 806, 809 (1922) ("[I]t is not error that a competent juror was excluded from the panel. It is altogether different when an incompetent juror is accepted, because an accused person is entitled to a fair jury, but if he gets a fair jury he has no right to complain that other fair jurors were not sworn to try his case."); Fishburne v. Commonwealth, 103 Va. 1023, 1025, 50 S.E. 443, 443 (1905) (excluding a qualified venireman is "not error for which judgment should be reversed"); see also Hayes v. Missouri, 120 U.S. 68, 71 (1887) ("The right to challenge is the right to reject, not to select a juror. If from those who remain, an impartial jury is obtained, the constitutional right of the accused is maintained."); Northern P. R. Co. v. Herbert, 116 U.S. 642, 646 (1886) (holding that "[a] competent and unbiased juror was selected and sworn, and the [defendant] had, therefore, a trial by an impartial jury, which was all it could demand").

[3] See also Anderson v. Commonwealth, 251 Va. 437, 439, 470 S.E.2d 862, 863 (1996) (holding appellant bore burden of furnishing record sufficient to permit appellate review); Davis v. Commonwealth, 35 Va. App. 533, 537, 546 S.E.2d 252, 254 (2001) ("[Appellant] has the burden to preserve an adequate record on appeal to allow us to consider the propriety of the trial court's actions."); Kerr v. Commonwealth, 35 Va. App. 149, 151, 543 S.E.2d 612, 613 (2001) ("The burden is upon the appellant to provide us with a record which substantiates the claim of error.").

"counsel's recollection of what occurred" in the trial court, <u>Bryant v. Commonwealth</u>, 189 Va. 310, 320, 53 S.E.2d 54, 59 (1949). We must rely solely on the trial court record. <u>Id.</u>

Shaikh contends the literal texts of both instructions can be extrapolated from the transcript of oral argument. We disagree. The transcript provides us with a partial quote from Instruction R, which ends with an "*etcetera*" description of the remainder of the disputed instruction. The prosecutor complained that the *etcetera* portion left "out some relevant language . . . some pretty important things" necessary for the instruction to be a correct statement of law. Shaikh's counsel later argued in favor of the "compromise" instruction. The prosecutor again objected, arguing that counsel had "culled" misleading phrases from appellate court opinions into the revised proposal. The transcript, however, fails to state with sufficient specificity the text of the "compromise" instruction.

Perhaps we could discern from counsel's remarks what that *etcetera* portion of Instruction R might have said or not said and, roughly speaking, what the debated textual revisions were to the "compromise" instruction. But either exercise would be little more than speculation on our part. In cases where, as here, the issue on appeal involves finely drawn (often semantic) distinctions over the texts of jury instructions, we cannot competently adjudicate the matter on such a poor record. For these reasons, we hold that Shaikh's failure to ensure that the record includes the texts of Instruction R or the "compromise" instruction precludes us from evaluating his claim that the trial court erred by refusing them.

We also reject Shaikh's assertion that, in any event, the trial court had a *sua sponte* obligation to issue its own definitional instruction. While we agree a trial court has an "affirmative duty" to instruct a jury on a principle of law "vital to a defendant in a criminal case," <u>Jimenez v. Commonwealth</u>, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991), we disagree that this duty applied under the circumstances of this case.

"When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." Gaines v. Commonwealth, 39 Va. App. 562, 568, 574 S.E.2d 775, 778 (2003) (*en banc*) (citations omitted). Jury instructions should be "simple, impartial, clear and concise." Id. at 567, 574 S.E.2d at 777. "When they are, they do not need clarification." Id.; see also Seaton v. Commonwealth, 42 Va. App. 739, 755, 595 S.E.2d 9, 17 (2004).[4] In short, clarifications need not be given when, "taken in the context of the charge as a whole and the evidence in the case, the tenor of a word or phrase is reasonably clear." United States v. Sabetta, 373 F.3d 75, 82 (1st Cir.) (citation omitted), cert. denied, 125 S. Ct. 433 (2004).[5]

In this case, we cannot say the trial court left a vital issue unaddressed by using the model concert of action instruction. It has been discussed many times by Virginia courts, without any hint of criticism as being ill defined or beyond the comprehension of ordinary jurors.[6] Nothing in its text suggests, as Shaikh claims, "the jury was left to invent its own definition of concert of action, or worse, apply a strict liability standard to appellant's conduct." The instruction

---

[4] A trial court may accept an amplifying instruction under such circumstances, but "it does not follow that it was reversible error to refuse it." Gaines, 39 Va. App. at 568, 574 S.E.2d at 778 (quoting Lincoln v. Commonwealth, 217 Va. 370, 375, 228 S.E.2d 688, 692 (1976)).

[5] We expect jurors to understand, for example, the meaning of "reasonable doubt," Strawderman v. Commonwealth, 200 Va. 855, 858, 108 S.E.2d 376, 379 (1959), the term "probability," Roach v. Commonwealth, 251 Va. 324, 346, 468 S.E.2d 98, 111 (1996), and the phrase "violence or intimidation," Seaton, 42 Va. App. at 754-55, 595 S.E.2d at 16-17.

[6] See, e.g., Winston v. Commonwealth, 268 Va. 564, 604 S.E.2d 21 (2004); Carter v. Commonwealth, 232 Va. 122, 348 S.E.2d 265 (1986); Blevins v. Commonwealth, 209 Va. 622, 166 S.E.2d 325 (1969); Spradlin v. Commonwealth, 195 Va. 523, 79 S.E.2d 443 (1954); Davis v. Commonwealth, 36 Va. App. 291, 549 S.E.2d 631 (2001); Hampton v. Commonwealth, 34 Va. App. 412, 542 S.E.2d 41 (2001); Charlton v. Commonwealth, 32 Va. App. 47, 526 S.E.2d 289 (2000); Tibbs v. Commonwealth, 31 Va. App. 687, 525 S.E.2d 579 (2000); McLean v. Commonwealth, 30 Va. App. 322, 516 S.E.2d 717 (1999) (*en banc*); Ascher v. Commonwealth, 12 Va. App. 1105, 408 S.E.2d 906 (1991); Rollston v. Commonwealth, 11 Va. App. 535, 399 S.E.2d 823 (1991).

informed jurors that, even if they found Shaikh acted in concert with his brother-in-law, Shaikh could only be held liable for the murder (the "resulting crime") if he participated "in bringing it about." This is the "thrust of the concert of action principle" under Virginia law. Roger D. Groot, Criminal Offenses & Defenses In Virginia 632 (2005). Because we "presume the jury followed the instructions of the court," Seaton, 42 Va. App. at 750, 595 S.E.2d at 14, we do not share Shaikh's fears that the jurors would ignore this aspect of the instruction.

Perhaps so, Shaikh argues, but in this case the jurors' question demonstrates they found the concert of action instruction inscrutable. We disagree. The question suggested the jurors were reading it in conjunction with the principal-in-the-second-degree instruction[7] — an exercise the trial judge implicitly endorsed (at Shaikh's urging) by reminding them simply to read and follow the instructions given. See generally Middleton v. McNeil, 124 S. Ct. 1830, 1832 (2004) (noting that a "single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge"); Elliott v. Commonwealth, 267 Va. 464, 469, 593 S.E.2d 263, 266 (2004) ("The law applicable to the case is contained in multiple instructions which, taken collectively, give proper guidance to the jury.").

---

[7] This instruction stated:

> A principal in the first degree is the person who actually commits the crime. A principal in the second degree is a person who is present, aiding and abetting, by helping in some way in the commission of the crime. Presence and consent alone are not sufficient to constitute aiding and abetting. It must be shown that the defendant intended his words, gestures, signals or actions to in some way encourage, advise, or urge, or in some way help the person committing the crime to commit it.
>
> A principal in the second degree is liable for the same punishment as the person who actually committed the crime.

1 Virginia Model Jury Instructions, Criminal, No. 3.100, at I-69 (1998).

Read this way, the jurors' question reflects considerably more discernment than Shaikh's supposition allows. We have described the concert of action doctrine as a "species of accomplice liability." Davis v. Commonwealth, 36 Va. App. 291, 295, 549 S.E.2d 631, 633 (2001). It should be distinguished from common law conspiracy principles, which do not require the vicariously liable conspirator to participate in bringing about the crime. See generally Groot, supra, at 166, 633. And while conspiracy relies on some express or implied agreement, concert of action liability requires only that informal "element of agreement in the decision by one person to become an aider and abettor to another." John L. Costello, Virginia Criminal Law & Procedure § 17.2-4, at 223 (3d ed. 2002).[8]

To be sure, the text of what later became the model concert of action instruction comes from Spradlin v. Commonwealth, 195 Va. 523, 528, 79 S.E.2d 443, 445 (1954). See Rollston v. Commonwealth, 11 Va. App. 535, 543, 399 S.E.2d 823, 827 (1991). In Spradlin, the Virginia Supreme Court employed the concert of action concept as a mere application of aiding and abetting principles to the situation of a joint attack. The Court's analysis all but equated the concepts, both in its restatement of legal doctrine and its review of the facts of the case.[9] See

---

[8] We acknowledge that the expression "concert of action" has been used as a loose synonym for conspiracy. See, e.g., Whited v. Commonwealth, 174 Va. 528, 533, 6 S.E.2d 647, 649 (1940) (stating that concert of action "must be based upon a conspiracy"); Ascher, 12 Va. App. at 1127-28, 408 S.E.2d at 920 ("The concert of action instruction, like Instruction 33, was then given to address the *liability* of the conspirators if the jury found a conspiracy existed." (emphasis in original)). This oblique use of the phrase, however, must be viewed in the specific factual contexts of those cases.

[9] Each of the three Virginia citations noted in Spradlin, 195 Va. at 528, 79 S.E.2d at 445, as authority for the concert of action doctrine involved principles of aiding and abetting liability. See Hurd v. Commonwealth, 159 Va. 880, 890, 165 S.E. 536, 540 (1932) (finding that defendant did not act in concert with shooter, and thus, cannot be said to have "aided or abetted in the commission of the crime"); Boggs v. Commonwealth, 153 Va. 828, 835-36, 149 S.E. 445, 447 (1929) (integrating "aiding and abetting" and "concert of action" principles to support defendant's conviction of murder as principal in the second degree where no direct evidence on which of the two present actually fired the fatal shot); Brown v. Commonwealth, 130 Va. 733, 737, 107 S.E. 809, 811 (1921) (upholding defendant's conviction where, although he did not do

Spradlin, 195 Va. at 528-29, 79 S.E.2d at 446 (holding the defendants were "associated in this concerted action and participated in bringing it about" and thus were "aiding and abetting in the commission of the crimes for which the jury found them guilty"); see also Carter v. Commonwealth, 232 Va. 122, 125, 348 S.E.2d 265, 267 (1986) (noting that one can be "convicted as a principal in the second degree of the use of a firearm in the commission of a felony where he acted in concert with the gunman").[10]

We can hardly fault the jurors in our case for asking about, and then likely making, exactly the same observation about the relationship between the concert of action doctrine and aiding and abetting principles. Their question, therefore, gives us no cause for fearing they misunderstood the instructions of law governing their deliberations and verdict.

### III.

We hold the trial court did not abuse its discretion in dismissing Mastric and Siam from the venire. Given the inadequacy of the record, we are unable to review the trial court's rejection of the specific language of Instruction R or the "compromise" instruction. Finally, we hold that the trial court had no affirmative duty to fashion its own definitional instruction to accompany the model concert of action instruction.

For these reasons, we affirm Shaikh's conviction.

Affirmed.

---

the shooting, he "was present, aiding and abetting the crime" of murder as principal in the second degree even though original plan between appellant and his companion did not include the shooting).

[10] While we agree with the Commonwealth that the prosecutor's closing argument could be relied upon to clarify an otherwise ambiguous jury charge, Middleton, 124 S. Ct. at 1833, we see no need to address that subject here given our holding.

- 12 -

Benton, J., dissenting.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).

> "The purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict, so far as it is competent for the court to assist them. The chief object contemplated in the charge of the judge is to explain the law of the case, to point out the essentials to be proved on the one side or the other, and to bring into view the relation of the particular evidence adduced to the particular issues involved. In his instructions the trial judge should inform the jury as to the law of the case applicable to the facts in such a manner that they may not be misled."

Cooper v. Commonwealth, 2 Va. App. 497, 500, 345 S.E.2d 775, 777 (1986) (citation omitted).

In applying these principles the trial judge must be mindful that "[e]ach party is entitled to have jury instructions upon vital points in language chosen by it, if the instruction is a correct statement of the law." Broady v. Commonwealth, 16 Va. App. 281, 291, 429 S.E.2d 468, 474 (1993); accord Jeffress v. Virginia Ry. & Power Co., 127 Va. 694, 714, 104 S.E. 393, 399 (1920). The principle is equally well established that it is error not to instruct the jury on a point at issue when the jury may make findings based upon a mistaken belief of the law. Martin v. Commonwealth, 218 Va. 4, 7, 235 S.E.2d 304, 305 (1977) (*per curiam*). These elemental principles were violated in the trial of this case.

I.

"Although the Commonwealth prevailed at trial, the appropriate standard of review requires that we view the evidence with respect to the refused instruction in the light most favorable to the defendant." Boone v. Commonwealth, 14 Va. App. 130, 131, 415 S.E.2d 250, 251 (1992) (citing Blondel v. Hays, 241 Va. 467, 469, 403 S.E.2d 340, 341 (1991)). The

- 13 -

indictment charged that Ahmer "Shaikh did feloniously kill and murder Mohammad Zahid Ali." The Commonwealth's theory of prosecution was that Shaikh planned with others to harm Ali and was an accessory to the primary perpetrator, Rehman, who stabbed Ali. In questioning the witnesses, the prosecutor sought to prove that through preplanning Rehman invited Ali to Shaikh's family's apartment. After Ali arrived, Rehman waited until Shaikh arrived so that Shaikh could join Rehman in teaching Zahid a lesson. Thus, the prosecutor argued to the jury that Rehman waited until "this defendant arrives, [and that] when the reinforcement arrives, . . . they arm themselves" to injure Ali.

Shaikh, on the other hand, testified that he only learned that Ali was entering his apartment when his brother called on the telephone. Returning to the apartment, he heard a commotion and went inside. Shaikh testified that after he and Ali began swearing at each other, Rehman and Ali began to fight. Shaikh then saw something in Ali's hand and hit it with a stick. After the item fell from Ali's hand, Shaikh noticed it was a telephone and he saw blood on Ali. Shaikh testified that he then tried to intervene to stop the fight and then noticed that Rehman had a knife. Other witnesses also testified that Shaikh tried to stop the fight between Rehman and Ali.

At the conclusion of the evidence, the prosecutor tendered jury Instruction number 8. It reads as follows:

> The Court instructs the jury that if there is concert of action with the resulting crime one of its incidental probable consequences, then whether such crime was originally contemplated or not, all who participate in any way in bringing it about are equally answerable and bound by the acts of every other person connected with the consummation of such resulting crime.

Shaikh's attorney objected to the instruction as being incomplete and proposed that the instruction be amended to define concert of action by including "the words . . . 'concert of action is an action that's been planned, arranged, adjusted, agreed on or settled between the parties

- 14 -

acting together . . .' et cetera." He informed the judge that this definition was taken from Berkeley v. Commonwealth, 19 Va. App. 279, 451 S.E.2d 41 (1994), and he tendered to the judge a proposed instruction. The prosecutor opposed amending the instruction, stating that Instruction number 8 was a correct statement of the law.

The trial judge precisely understood the point of Shaikh's objection. We know this to be so because the trial judge said, "Well, what it appears, though, that he's doing is taking just the definition of the term 'concert of action' and explaining to the jury what that term means." Although the trial judge said he "generally think[s] a definition to be helpful," he ruled, however, that the prosecutor's proposed instruction was "fairly clear" and refused to amend Instruction number 8. Although the instruction proposed by Shaikh's attorney is not in the record, the judge indicated he would "put it in the file to preserve your [objection]," and the judge denoted the instruction "R."

We have no explanation for the instruction's absence from the record. It seems clear, however, that Shaikh is not responsible for the absence of the instruction. His attorney tendered the instruction to the judge. Moreover, when, as here, the judge said he would put Shaikh's instruction in the file, no basis exists to penalize Shaikh for the trial judge's or the clerk's misplacement of the instruction. In any event, no confusion exists about the objection, the proposal to amend the instruction, or the goal Shaikh's attorney sought to accomplish. Indeed, the transcript contains Shaikh's attorney's recitation of the language at issue. The record also establishes that after these events occurred, Shaikh's attorney sought to further explain the purpose of the instruction he sought. He told the trial judge that the definition was "particularly appropriate" in this case because "what's really at issue is whether or not there was some pre-planning." As a compromise, the prosecutor then proposed amplifying the rejected instruction by adding a sentence. Later, when the parties again discussed the instruction with the

- 15 -

judge, the prosecutor back-tracked, saying "[t]he model jury instruction is fine, and its been used in exactly this fact pattern before and upheld." The judge agreed and ruled that he would give the jury the prosecutor's Instruction number 8.

It is manifest from this record that the trial judge precisely understood the nature of the objection and the purpose to be served by amending the instruction. In the judge's colloquy with the attorneys, he articulated in unambiguous terms that Shaikh wanted the jury to have a definition of concert of action so that in applying the law to the facts before it the jury knew what the term "concert of action" meant.

## II.

It is a fundamental rule that "when a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter." Jimenez v. Commonwealth, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991). "That principle applies . . . [because the] trial judge's 'imperative duty [to properly instruct the jury] . . . is one which can neither be evaded nor surrendered.'" Johnson v. Commonwealth, 20 Va. App. 547, 554, 458 S.E.2d 599, 602 (1995) (citation omitted). Thus, in a criminal trial, even if a party proposes an imprecise instruction, the trial judge must correct or amend that instruction if it covers principles of law necessary for the jury to understand the case. Whaley v. Commonwealth, 214 Va. 353, 355-56, 200 S.E.2d 556, 558 (1973).

The vital principle at issue is Virginia's long standing rule that a person is criminally liable as an accomplice if he operates in "concert of action" with the actual perpetrator of a crime. See, e.g. Hurd v. Commonwealth, 159 Va. 880, 892, 165 S.E. 536, 540 (1932); Brown v. Commonwealth, 130 Va. 733, 737-38, 107 S.E. 809, 810-11 (1921); Kemp v. Commonwealth, 80 Va. 443, 450 (1885). In Brown, the Supreme Court explained concert of action and the resulting liability as follows:

All those who assemble themselves together with an intent to commit a wrongful act, the execution whereof make probable, in the nature of things, a crime not specifically designed, but incidental to that which was the object of the confederacy, are responsible for such incidental crime . . . . Hence, it is not necessary that the crime should be a part of the original design; it is enough if it be one of the incidental probable consequences of the execution of that design, and should appear at the moment to one of the participants to be expedient for the common purpose.

130 Va. at 738, 107 S.E. at 811 (quoting 1 Wharton's Criminal Law § 258, at 329, 330 (11th ed.)) Thus, we have repeatedly held that concert of action "is defined as '[a]ction that has been planned, arranged, adjusted, agreed on and settled between parties acting together pursuant to some design or scheme.'" Rollston v. Commonwealth, 11 Va. App. 535, 542, 399 S.E.2d 823, 827 (1991) (quoting Black's Law Dictionary 262 (5th ed. 1979)); see also Tice v. Commonwealth, 38 Va. App. 332, 340, 563 S.E.2d 412, 416 (2002); Berkeley, 19 Va. App. at 283, 451 S.E.2d at 43. Indeed, because of the scope of resulting liability, "[t]he early cases concerning concert of action make it clear that . . . the original plan must be for a wrongful purpose." Rollston, 11 Va. App. at 542, 399 S.E.2d at 827.

The instruction that the judge gave to the jury sought to establish a condition for liability under these principles because it began with the conditional phrase, "if there is a concert of action with the resulting crime one of its incidental probable consequences, . . . ." Yet, the judge failed to define concert of action for the jury. However, as the Supreme Court has held, a correctly drawn concert of action instruction must "draw a distinction between concert of action and simultaneous action." Whited v. Commonwealth, 174 Va. 528, 533, 6 S.E.2d 647, 649 (1940). This distinction is critical because, as Whited holds, "[c]oncert of action must be based upon a conspiracy to commit an illegal act, and one who aids and abets in the commission of the crime must share in the criminal intent of the actual perpetrator of the criminal act." 174 Va. at 533, 6 S.E.2d at 649. It is this preplanning or connivance that gives rise to the resulting liability

under the doctrine due to a sharing of the accused "in the criminal intent of the actual perpetrator of the criminal act." Id.

Omitting the definition was not harmless error. This instruction was vital to Shaikh's defense. Indeed, the jury's determination of Shaikh's guilt depended on this issue. Without a definition of concert of action, the jury was not instructed in a manner that would have permitted it to know the difference between concert of action and simultaneous action. Shaikh and his witnesses testified that Rehman stabbed Ali during a fight in which Shaikh, although angry with Ali, sought to separate the two combatants. Although the jury was told it could convict Shaikh using the principles of concert of action, no instruction apprised the jury of the critical "distinction between concert of action and simultaneous action." Id. Rather, Instruction number 8 permitted the jury to blur the distinction between concert of action, which requires planning to be criminally punishable, and simultaneous action, which does not.

By informing the jury that "all who participate *in any way* in bringing . . . about [the event] are equally answerable," the instruction allowed the jury to assess criminal culpability upon Shaikh under concert of action without a finding of the necessary precondition -- "[a]ction that had been planned, arranged, . . . and settled between parties acting together pursuant to some design or scheme." Rollston, 11 Va. App. at 542, 399 S.E.2d at 827. In short, the judge permitted the jury to convict Shaikh under "concert of action" without the necessity of it finding beyond a reasonable doubt the existence of the significant fact needed to support the conviction.

The error in this case does not even meet the least rigorous test for harmlessness.

> "[I]f one cannot say, with fair assurance, after pondering all that
> happened without stripping the erroneous action from the whole,
> that the judgment was not substantially swayed by the error, it is
> impossible to conclude that substantial rights were not affected. . . .
> If so, or if one is left in grave doubt, the conviction cannot stand."

- 18 -

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).

The record graphically demonstrates that the jury was confused by the concert of action concept and that the trial judge left the jury to speculate on its meaning. We know this to be the case because the jury interrupted its deliberations, informed the judge that Instruction number 8 was a matter of concern, and asked for help in deciphering its application. In the following question, the jury expressly relayed to the judge the need for a definition and its inability to understand the incomplete instruction:

> In considering instruction #8, does the jury make a decision with regard to it using the criteria in instruction #9 for a principle in the second degree? Especially the sentence: "It must be shown that the defendant intended his words, questions, signals or actions to in some way encourage, advise, or urge, or in some way help the person committing the crime to commit it."

It is a well established, elementary principle, "that a jury must be informed as to the essential elements of the offense; a correct statement of the law is one of the essentials of a fair trial." Darnell, 6 Va. App. at 488, 370 S.E.2d at 719 (internal quotations and citation omitted). Despite clear indication that the judge understood that Shaikh wanted the jury to understand the requirements of the law, he nevertheless refused to give the instruction. The prosecutor's argument to the judge, that Instruction 8 conformed to the model jury instructions and had been upheld in other cases, disregards the mandate of Code § 19.2-263.2 that "[a] proposed jury instruction submitted by a party, which constitutes an accurate statement of the law applicable to the case, shall not be withheld from the jury solely for its nonconformance with model jury instructions." Citing his discomfort because of the "[a]bsen[ce] of Supreme Court authority approving the amplification," the trial judge essentially adopted the argument and refused to modify the prosecutor's instruction. Thus, the trial judge never explained to the jury that the burden was upon the Commonwealth to prove a prior plan to commit a criminal act and that the

- 19 -

jury should acquit Shaikh if it entertained a reasonable doubt whether it existed.  As a result of this error, the jury cannot be said to have reached the level of certitude constitutionally required to convict.  Put simply, the jury was not instructed properly regarding the applicable law.

> Unless [the appropriate] elements are defined by instructions available to the members of the jury during their deliberation, they cannot properly determine whether the Commonwealth has carried its burden . . . .  "It is always the duty of the court at the proper time to instruct the jury on all principles of law applicable to the pleadings and the evidence."

Dowdy v. Commonwealth, 220 Va. 114, 116, 255 S.E.2d 506, 508 (1979) (citations omitted).

The principle is long standing that even if "the other evidence amply supports the jury's verdicts, [error is not harmless when] the [error] may well have affected the jury's decision." Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978).  The judge erred in refusing an instruction embodying these propositions merely because he could not find a Supreme Court case in which a challenge was made to the absence of a definitional instruction. In discharging his obligation to give "appropriate instructions telling the jury the law applicable to . . . the case," the judge must be mindful that "each party may employ language of its own choosing so long as it 'is in keeping with the law.'"  Banner v. Commonwealth, 204 Va. 640, 645-46, 133 S.E.2d 305, 309 (1963).

As the jury's question to the judge indicates, the jury apparently believed that simultaneous action was sufficient to establish concert of action and convicted Shaikh using the incomplete instruction.  I would hold that the record plainly establishes that by refusing to give the jury a correct, full statement of the law, the judge committed reversible error.  Thus, I would reverse the conviction and remand for a new trial.