COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:  Judges Huff, Athey and Fulton
Argued by videoconference


DUSTIN KEITH CONLEY

v.     Record No. 0682-21-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE JUNIUS P. FULTON, III
MAY 3, 2022


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Norman H. Lamson for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Dustin Keith Conley appeals his convictions, following a jury trial, of the object sexual

penetration, forcible sodomy, and rape of his ex-wife, J.M.  He was sentenced to twenty-five years

of imprisonment, with all but twenty-two years and eighteen months suspended.  Conley assigns

error to the trial court's admission into evidence of certain prior bad acts and the court's failure to

instruct the jury regarding the issues of consent and mistake of fact.  Conley similarly claims that

the court's response to a jury question regarding implied consent was deficient.  Finally, he asserts

that the court erred in giving a "sodomy" jury instruction that listed the elements of "rape."  For the

reasons that follow, we affirm the ruling of the trial court.

BACKGROUND[1]

Conley and the victim, J.M., married in June 2007. They had two children during their marriage. After a period of marital strife, the couple separated in October 2012 and divorced in July 2014. During their marriage, the couple consensually filmed themselves engaging in sexual intercourse on approximately twenty occasions. Pursuant to their settlement agreement upon divorce, Conley was required to delete those videos. After the divorce, J.M. moved to Albemarle County. At the end of 2014, Conley moved into J.M.'s Albemarle home and within a short time the couple resumed their relationship. During this period, Conley and J.M. drank heavily and experienced financial issues. In the summer of 2017, J.M. ended the relationship with Conley and evicted him from the home.

In November 2017, J.M. found an old phone in her home. She turned it on and found "thumbnails of nudity and sex that [she] didn't recognize." J.M. realized that those videos (the "Fairfax videos") documented Conley performing sexual acts on her while she slept. J.M. did not have any recollection of the acts depicted in the Fairfax videos, which were created during the couple's marriage and filmed at their former marital home in Fairfax.

In January or February 2018, J.M. plugged her new iPhone into her computer and inadvertently connected her phone to Conley's iCloud account. While attempting to disconnect her phone from Conley's account, J.M. discovered nine additional videos showing Conley committing sexual acts on her while she slept. These videos (the "Albemarle videos") were filmed while the couple lived together in Albemarle County. The first two videos, filmed on different dates, depict J.M. sleeping on her back while Conley penetrates her vagina with a clear oblong sex toy. J.M. can be heard snoring in the first video. In the third video, J.M. is sleeping on her side while Conley

_____

[1] Under the applicable standard of review, this Court considers the evidence in the light most favorable to the Commonwealth, as the prevailing party below. *See Adjei v. Commonwealth*, 63 Va. App. 727, 747 (2014).

penetrates her vagina with his penis. In the fourth video, J.M is sleeping on her side while Conley penetrates her anus with his penis. Halfway through that video, J.M. appears to wake up. She rolls over and, as Conley covers up the camera, she groggily says "ow, ow," and "that hurts." The fifth through ninth videos were filmed on the same night and depict J.M. sleeping on her side, audibly snoring, while Conley penetrates her vagina with his penis and holds her vagina open.

Throughout their relationship, J.M. was prescribed multiple medications which interacted negatively with alcohol. When she combined her medications with alcohol, they made her "more drunk," and sometimes caused her to "pass out." Conley was aware of J.M.'s medications and the effect they had on J.M. when she consumed alcohol and would often remind her to take them. In addition, J.M. and Conley both used illegal drugs at times throughout their relationship and mixed those drugs with alcohol as well.

J.M. testified that she recalled one occasion while living with Conley in Albemarle when he gave her a "foaming" beer. When she asked what was wrong with it, he replied, "That's how they all are." J.M. did not believe Conley, so she poured the beer from its can into a glass and saw "sediment that filtered down and settle[d] on the bottom."[2] J.M. did not drink the beer.

For the conduct depicted in the Albemarle videos, Conley was indicted on two counts of rape, two counts of object sexual penetration, and one count of forcible sodomy.

Before the trial, both the Commonwealth and Conley filed motions *in limine*. The Commonwealth filed a motion *in limine* seeking to introduce the Fairfax videos as evidence of "prior bad acts" under Rule of Evidence 2:303(b). The trial court granted the motion but excluded any mention of Conley's convictions in Fairfax County stemming from the acts depicted in the

_____

[2] During trial, Conley testified that he and J.M. had found "purple powder" on top of their beer cans and later found "crushed" candy from Halloween on the counter. He testified that the powder tasted sweet.

- 3 -

Fairfax videos. Conley's motion sought to exclude any testimony about the sediment J.M. observed in the beer. Characterizing the testimony regarding the "foaming beer" as that of a "prior bad act," the trial court denied Conley's motion, but ordered the Commonwealth to refer only to "sediment" in the beer, rather than a "pill."

At the conclusion of the trial, the jury was instructed to consider whether Conley had committed rape, object sexual penetration, and sodomy, through use of J.M.'s physical helplessness. The jury convicted Conley of all charges. This appeal followed.

ANALYSIS

A. Prior Bad Acts

1. *Standard of Review*

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Jones v. Commonwealth*, 38 Va. App. 231, 236 (2002) (quoting *Blain v. Commonwealth*, 7 Va. App. 10, 16 (1988)). Evidence of other crimes, wrongs, or acts is inadmissible if offered merely to show the accused's propensity to commit the crime for which he is charged. *See* Va. R. Evid. 2:404(b); *Kenner v. Commonwealth*, 299 Va. 414, 424 (2021); *Gonzales v. Commonwealth*, 45 Va. App. 375, 380 (2005) (*en banc*). However, the general rule excluding evidence of other crimes "must sometimes yield to society's interest in the truth-finding process, and numerous exceptions allow evidence of prior misconduct whenever the legitimate probative value outweighs the incidental prejudice to the accused." *Gonzales*, 45 Va. App. at 381 (quoting *Dunbar v. Commonwealth*, 29 Va. App. 387, 390 (1999)).

Such "prior bad acts" evidence is admissible "if it tends to prove any relevant fact pertaining to the offense charged, such as where it is relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or if they are part of

- 4 -

a common scheme or plan."  Va. R. Evid. 2:404(b); *see also Kenner v. Commonwealth*, 71 Va. App. 279, 290 (2019) (quoting *Quinones v. Commonwealth*, 35 Va. App. 634, 640 (2001)), *aff'd*, 299 Va. 414 (2021).  It is also well established that "prior bad acts" evidence is admissible "when it 'shows the conduct or attitude of the accused toward his victim[,] establishes the relationship between the parties,'" *Kenner*, 299 Va. at 424 (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 714 (2008)), or if "the evidence is connected with or leads up to the offense for which the accused is on trial," *Woodfin v. Commonwealth*, 236 Va. 89, 95 (1988) (quoting *Kirkpatrick v. Commonwealth*, 211 Va. 269, 272 (1970)).

Once the Court has determined that the "prior bad acts" evidence is relevant, and not mere "propensity evidence," the Court must still determine whether the risk of unfair prejudice outweighs the probative value of the evidence.  *See* Va. R. Evid. 2:404(b); *see also Hall v. Commonwealth*, 143 Va. 554 (1925).

### 2. *The Fairfax Videos*

Conley's first objection to the admission of the Fairfax videos is that the trial court "never expressed which specific exception [it] was basing [its] decision on."  Citing Wisconsin case law, Conley argues that "[w]here the trial court 'did not specifically identify an exception' and 'did not provide a reasoned explanation that the evidence was more probative than prejudicial,' the appellate court 'must independently review the evidence to determine if it supports the trial court's decision to admit the other crimes evidence.'"  App. Br. at 18-19 (quoting *State v. Shillcutt*, 341 N.W.2d 716, 719-20 (Wis. App. 1983)).  This is not the law of the Commonwealth.  We have not, and do not now, require a trial court to make specific citation to a particular evidentiary rule each time it decides to admit or exclude a piece of evidence.  Conley seeks to circumvent our abuse of discretion standard of review and obtain *de novo* review of the decision to admit the Fairfax videos.  However, trial judges have "broad discretion" over evidentiary questions and "the trial judge's 'ruling will not

- 5 -

be reversed simply because an appellate court disagrees.'" *Thomas v. Commonwealth*, 44 Va. App. 741, 753 (quoting Henry J. Friendly, *Indiscretion about Discretion*, 31 Emory L.J. 747, 754 (1982)), *adopted upon reh'g en banc*, 45 Va. App. 811 (2005).

Conley next argues the Fairfax videos lack probative value. We disagree. "Evidence of other crimes is admissible if it tends to prove any fact in issue, even though it also tends to show the defendant guilty of another crime." *Spencer v. Commonwealth*, 240 Va. 78, 89 (1990). The Fairfax videos, which, save for the location, are virtually indistinguishable from the series of videos depicting the crimes charged in this case, are relevant to prove numerous facts at issue. In several of the Fairfax videos, J.M. can be heard snoring heavily as Conley filmed her genitalia and performed sexual acts on her. Conley can be seen on the Fairfax videos using his fingers and penis to penetrate J.M.'s genitalia, performing cunnilingus on J.M., and using J.M.'s limp hand to masturbate his penis. The only time J.M. wakes during the Fairfax videos, she is heard drowsily muttering unintelligibly and Conley can be seen covering up the camera.

The Fairfax videos are evidence of the relationship between the parties and show Conley's conduct and attitude toward J.M. They also tend to negate Conley's assertion that J.M. was role playing or feigning sleep and show instead that she was deeply asleep and possibly heavily medicated or intoxicated, as well as his knowledge of her physical helplessness. The videos also counter Conley's claim that he was acting consistently with J.M.'s consent to "wake her up with [his] penis," as Conley never speaks and moves quietly and often slowly throughout the videos. In the single instance in which J.M. wakes, Conley in fact attempts to hide the camera. Further, the Fairfax videos are relevant evidence of Conley's *modus operandi* as they demonstrate an idiosyncratic pattern of behavior toward J.M. The videos go beyond merely depicting Conley having intercourse with J.M. Rather, they show that he repeatedly and surreptitiously recorded sexual acts with her while she was obviously heavily unconscious to the point of snoring. This

*modus operandi* evidence evinces Conley's intent to sexually assault J.M. Although Conley testified that he was attempting to wake J.M. by performing sexual acts, the videos are probative of the Commonwealth's position contradicting that claim.

Having determined the relevancy of the Fairfax videos, we now must consider whether the legitimate probative value of the videos outweighs their prejudicial effect. Va. R. Evid. 2:404(b); *Kenner*, 299 Va. at 427. "The responsibility for balancing the two considerations rests in the trial court's discretion and we will not disturb the court's determination in the absence of a clear abuse of discretion." *Kenner*, 299 Va. at 427. The facts in this case are distinguishable from those in *Quinones v. Commonwealth*. In *Quinones*, this Court held that testimony regarding pornographic videotapes seized from the defendant's home was irrelevant and highly prejudicial where there was no evidence that the videos involved the victim or showed any acts similar to those the defendant performed on the victim. 35 Va. App. at 642. The opposite is true here where the Fairfax videos portray Conley engaging in identical sexual acts upon the same sleeping or unconscious person as in the charged offenses. "The fact that evidence is highly prejudicial to a party's claim or defense, in and of itself, 'is not a proper consideration in applying the balancing test.'" *Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021) (quoting *Lee v. Spoden*, 290 Va. 235, 252 (2015)). Rather, relevant evidence will only be excluded if its prejudicial nature *substantially* outweighs its probative value. *Id.* To be excluded as unfairly prejudicial, "the nature of the evidence must be such that it generates such a strong *emotional* response that it is unlikely that the jury could make a *rational* evaluation of its proper evidentiary weight." *Id.* Considering the highly probative value of the Fairfax videos, and the fact that they portray Conley engaging in nearly identical sexual acts upon the same sleeping or unconscious person, such that they are virtually indistinguishable from the videos of the Albemarle acts for which Conley was on trial, we cannot say that they would have inflamed the jury's passions or that the trial court abused its discretion

- 7 -

when it determined that the Fairfax videos' probative value was not substantially outweighed by their prejudicial effect.[3]

### 3. *Sediment observed in J.M.'s beer*

Conley similarly assigns error to the trial court's admission of testimony by J.M. regarding sediment she observed on one occasion in a beer Conley handed to her. At trial, J.M. was asked on direct examination whether she "remember[s] any particular incident that occurred . . . that may explain a deep sleep state." J.M. responded by describing a time when Conley brought her a beer that was foaming out of its can and when she poured it into a glass, she observed a "sediment that filtered down and settle[d] on the bottom." In overruling Conley's motion *in limine* to exclude this testimony, the trial court reasoned that the evidence was relevant to the issue of consent and whether J.M. was actually physically helpless or feigning asleep. The court further weighed the prejudicial impact of this evidence against its probative value. It ruled that J.M. would not be permitted to refer to the sediment as a "pill," as that would be overly prejudicial, but that the probative value of the description of the sediment alone was not otherwise outweighed by any prejudicial effect on Conley. We cannot say that the trial court abused its discretion in either its conclusion about the relevance nor the prejudice.[4]

---

[3] We note that Conley never requested a limiting instruction at trial regarding the Fairfax videos. As such, we deem any arguments Conley makes regarding the lack of a limiting instruction as waived. *See Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008) (holding defendant's argument that the court erred by not giving a limiting instruction regarding prior bad acts waived where it was not raised in the trial court and also holding that the ends of justice exception did not apply).

[4] Moreover, although J.M.'s testimony implied that she thought Conley had drugged her, it was not until Conley's cross-examination of J.M. that the direct connection was made clear. On cross-examination, J.M. was asked whether she was "suggesting that there was something in—that the sediment, that Mr. Conley had put the sediment in your drink?" J.M. responded "yes."

B. Jury Instructions

1. *Standard of Review*

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485. 488 (1988)). We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion. *Barney v. Commonwealth*, 69 Va. App. 604, 609 (2019). "[W]hether a jury instruction accurately states the relevant law is a question of law that we review de novo." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)).

2. *Lack of consent as an element or a defense to rape by physical helplessness*

Conley asserts that the trial court erred by failing to instruct the jury that lack of consent is an element of or that consent is an absolute defense to rape by physical helplessness. The Commonwealth argues Conley failed to preserve this assignment of error. We disagree. Following the close of the Commonwealth's evidence, the trial court and the attorneys held a preliminary discussion regarding jury instructions. The Commonwealth provided instructions to Conley's attorney and the trial court began to review the instructions, asking Conley's attorney whether he had any objections. Although the trial court indicated that it merely intended to conduct a preliminary review of the instructions and take them up later in the proceedings after Conley had an opportunity to review them with his counsel, Conley nevertheless raised a specific objection. During that conference, Conley's attorney argued: "It is clear that the law would require that the Commonwealth prove that there was no consent in this case, and the model instructions do not have the language, 'consent' in it, but nevertheless that is an element of the offense for all of the offenses." The trial court overruled Conley's objection and "noted" his exception. The trial court

- 9 -

subsequently addressed jury instructions again during a recess, but Conley did not reassert his argument for a "consent" instruction. Nevertheless, because the court's previous ruling was still extant as it was never vacated, Conley did not waive or fail to preserve his objection to the trial court's refusal to instruct the jury on "consent" as an element or defense to rape, sodomy, or object sexual penetration.

Because it is our duty to ensure that the jury instructions given at trial accurately state the law, we first consider the Virginia rape statute. Code § 18.2-61 provides, in the disjunctive, that rape can be accomplished through three different avenues: "(i) against the complaining witness's will, by force, threat or intimidation . . . ; or (ii) through the use of the complaining witness's mental incapacity or physical helplessness; or (iii) with a child under age 13 as the victim." The Virginia Model Jury Instructions reflect three distinct ways the crime of rape may be committed. Model Jury Instruction No. 44.100 provides the general rape instruction and instructs the jury that the Commonwealth must prove the following elements of rape: "(1) That the defendant [had sexual intercourse with (name of person); caused (name of person) to engage in sexual intercourse with another person]; and (2) That it was against her will and without her consent; and (3) That it was by force, threat, or intimidation." Instruction No. 44.140 instructs the jury that, in order to convict a defendant of the crime of rape of a child under thirteen, the Commonwealth must prove the following elements: "(1) That the defendant [had sexual intercourse with (name of child); caused a child to engage in sexual intercourse with (name of person)]; and (2) That at the time of the act (name of child) was under the age of 13." Because the allegations were that the crime was accomplished through J.M.'s physical helplessness, the jury instruction given in this case was derived from Instruction No. 44.300, which instructs the jury that, in order to convict a defendant of the crime of rape *where the complaining witness was mentally incapacitated or physically helpless*, the Commonwealth must prove the following elements:

(1) That the defendant had sexual intercourse with (name of person); and (2) That at the time (name of person) was [mentally incapacitated; physically helpless]; and (3) That at the time of the crime, the defendant knew or should have known (name of person) was [mentally incapacitated; physically helpless]; and (4) That the sexual intercourse was accomplished through the use of the complaining witness's [mental incapacity; physical helplessness].

These instructions are an accurate statement of the law and the elements of the crime of rape accomplished through physical helplessness.

We have the additional duty of ensuring that the "instructions cover all issues which the evidence fairly raises." *Fahringer*, 70 Va. App. at 211 (quoting *Darnell*, 6 Va. App. at 488). Although Conley asserted two alternative defenses in this case, both stemming from alleged consent granted to him by J.M., we find that because the criminal acts for which he was indicted all alleged that he accomplished the assaults through the physical helplessness of J.M., any alleged consent was necessarily immaterial to the jury's consideration of the elements of the crime and thus not an "issue[ ] which the evidence *fairly* raise[d]." *Id.* (emphasis added). Conley's first defense was that J.M. granted him advance consent to perform sexual acts on her while she was asleep. This Court recently addressed the question of consent in the context of a sleeping victim. *Nelson v. Commonwealth*, 73 Va. App. 617 (2021). We noted that "[l]ongstanding common law principles . . . recognize that a victim is unable to give consent for sexual contact while sleeping." *Id.* at 626 (first citing *Travis v. State*, 98 A.3d 281 (Md. Ct. Spec. App. 2014); then *State v. Moorman*, 358 S.E.2d 502 (N.C. 1987); and then 2 Wayne R. LaFave, *Substantive Criminal Law* § 17.4(b) (3d ed. 2018)). In *Nelson*, the defendant was convicted of aggravated sexual battery in violation of Code § 18.2-67.3, which required proof that the defendant sexually abused the victim "against [his or her] will . . . by force, threat[,] or intimidation." *Id.* at 623 (third alteration in original) (quoting Code § 18.2-67.3(A)(4)(a)). This Court held that "sleep rendered the victim unable to consent and proved constructive force." *Id.* at 628 n.6.

Conley was charged not with rape by force, threat, or intimidation, but with rape accomplished through the use of the victim's physical helplessness. In *Woodward v. Commonwealth*, 12 Va. App. 118 (1991), we held that "engaging in sexual intercourse with a sleeping victim can constitute commission of the crime of rape, in violation of Code § 18.2-61, by means of the victim's 'physical helplessness.'" *Nelson*, 73 Va. App. at 627 n.5 (citing *Woodward*, 12 Va. App. at 120-21). The defendant in *Woodward* argued that the trial court erred in refusing to instruct the jury on the issue of consent. *Woodward*, 12 Va. App. at 119. Woodward was specifically prosecuted "on the theory that at the time [he] had sexual intercourse with the victim, she was asleep and therefore physically helpless." *Id.* at 120. Summarily resolving Woodward's assignment of error regarding the consent jury instruction, we held: "[t]here is no evidence which supports the consent instruction requested by Woodward. Thus, '[a]n instruction is properly refused when it is unsupported by the evidence.'" *Id.* at 119 (second alteration in original) (quoting *Bennett v. Commonwealth*, 8 Va. App. 228, 234 (1989)).

Underlying Virginia's jurisprudence in the area of sexual assault is a recognition that a person must have the "capacity to consent," both physical and mental. *See e.g.*, Code § 18.2-61; *see generally Nelson*, 73 Va. App. at 626 n.4 (citing various sources supporting the proposition that a person must be capable of consent).[5] Furthermore, consent to engage in sexual acts must be ongoing and capable of being withdrawn at any time. To hold that a person can give prior consent to sexual activity taking place when they are asleep would deny that person the ability to withdraw that consent. Regardless of whether consent might have ever been given, and here that was disputed, because consensual sexual activity requires "continued consent" during the duration of the activity, whenever a sleeping person is unable to express consent, that person consequently cannot

---

[5] The English common law likewise recognized various circumstances in which a person may lack the capacity to consent. LaFave, *Substantive Criminal Law* § 17.4(b).

consent to sexual activity. Thus, the trial court did not abuse its discretion in overruling Conley's objection to the jury instructions that did not list lack of consent as an element. To provide an additional instruction on consent that is "inapplicable to the facts in evidence" would only serve to "confuse or distract the jury." *Morse v. Commonwealth*, 17 Va. App. 627, 633 (1994) (quoting *King v. Commonwealth*, 2 Va. App. 708, 711 (1986)).

Conley's second defense was that J.M. may have been feigning sleep in the videos. This defense likewise does not entitle Conley to a jury instruction regarding consent. The jury in this case was instructed to consider only whether Conley committed rape by physical helplessness, not whether he did so against J.M.'s will by force, threat, or intimidation. To convict Conley of rape on this charge, the jury was instructed that it must find, beyond a reasonable doubt, that J.M. was in fact physically helpless. This physical helplessness element was the second prong of the jury instruction: "That at the time [J.M.] was physically helpless." If the jury was persuaded by Conley's defense that J.M. was feigning sleep, then it necessarily could not find that the Commonwealth had satisfied this physical helplessness element and it would have to acquit. Consequently, Conley's defense that J.M. was feigning sleep was fully encompassed in the instructions provided by the trial court. The jury, therefore, was accurately and sufficiently instructed on the law and was able to consider Conley's defense.

3. *Lack of consent as an element or consent as a defense to object sexual penetration and sodomy by physical helplessness*

The crime of object sexual penetration is defined by Code § 18.2-67.2. Sodomy is defined by Code § 18.2-67.1. As with rape, object sexual penetration and sodomy can be accomplished in three ways, where: "1. The complaining witness is less than 13 years of age; or 2. The act is accomplished against the will of the complaining witness, by force, threat or intimidation . . . , or through the use of the complaining witness's mental incapacity or physical helplessness." Though the statutes are structured differently, we hold that the means of accomplishing object sexual

penetration and sodomy parallel those for accomplishing rape. Moreover, although the Virginia Model Jury Instructions do not contain separate instructions for object sexual penetration and sodomy accomplished through use of the victim's physical helplessness, the object sexual penetration instruction given to the jury in this case is an accurate statement of the law. The object sexual penetration instruction required the Commonwealth to prove:

> 1) That the defendant penetrated the outer lips of the female sexual organ of [J.M.] with any animate object; 2) That at the time [J.M.] was physically helpless; 3) That at the time of the offense the defendant knew or should have known [J.M.] was physically helpless; and 4) That the object sexual penetration was accomplished through the use of [J.M's] physical helplessness.

As discussed in greater detail *infra*, the sodomy instruction is an inaccurate statement of the law in that it contains an element of penetration of the female sex organ of J.M. Nevertheless, although the description of the anatomy was incorrect, the elements of the sodomy instruction pertaining to *how* the sodomy was accomplished (i.e., through the use of J.M.'s physical helplessness) mirror the elements listed in the object sexual penetration and rape instructions and are an accurate statement of the law.

In *Nelson*, we dealt with the offense of aggravated sexual battery and considered whether the "force" element in that statute was satisfied where the defendant sexually abused the victim while she was sleeping. 73 Va. App. at 622. Noting that our courts have consistently "held in the context of sexual offenses 'that "force" [is defined to] include[ ] both actual and constructive force,'" *id.* at 624 (alterations in original) (quoting *Martin v. Commonwealth*, 272 Va. 31, 34-35 (2006)), we held that "sleep rendered the victim unable to consent and proved constructive force," *id.* at 628 n.6. Because Conley was prosecuted on the theory that he committed object sexual penetration and sodomy on J.M. while she was asleep, and thus physically helpless, consent is not a proper issue on which the jury should have been instructed. The jury could either find that J.M. was in fact physically helpless, in which case, our caselaw holds she was

- 14 -

incapable of consent, or she was not physically helpless, in which case it would be required to find Conley not guilty of object sexual penetration and sodomy. Because the jury was accurately instructed on the law, and a consent instruction would only have served to confuse the jury, we affirm the ruling of the trial court. *See Morse*, 17 Va. App. at 633 (quoting *King*, 2 Va. App. at 711).

### 4. *Mistake of fact as a defense to rape by physical helplessness*

Conley asserts, in the alternative, that the trial court erred by failing to instruct the jury regarding mistake of fact as to consent as a defense to the rape, object sexual penetration, and forcible sodomy charges. He advances no argument in support of his contention, and he cites no Virginia authorities in support of his position. Instead, Conley merely cites three cases from other states or U.S. territories and states generally that they "have dealt with the issue." Rule 5A:20(e) requires a party to include in his brief: "argument—including principles of law and the authorities," for each assignment of error. "'[W]hen a party's "failure to strictly adhere to the requirements of Rule 5A:20(e)" is significant,' this Court may treat the question as waived." *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Parks v. Parks*, 52 Va. App. 663, 664 (2008)). "If [Conley] believed that the circuit court erred, it was [his] duty to present that error to us with legal authority to support [his] contention." *Sfreddo v. Sfreddo*, 59 Va. App. 471, 494 (2012) (quoting *Fadness v. Fadness*, 52 Va. App. 833, 851 (2008)). Because Conley provides no legal argument or authority in his brief to support his argument, and we find this omission significant, Conley's claim that the trial court erred in failing to instruct the jury regarding mistake of fact is waived.

### 5. *Jury question regarding implied consent*

Conley additionally assigns error to the trial court's answer to the jury's deliberation question regarding implied consent. When asked by the jury during deliberation "do any of the

charges include implied consent language?," the trial court consulted with counsel and then stated "that they will need to review the jury instructions and proceed with . . . the jury instructions that they have before them." Conley's attorney responded: "That would be fair, Your Honor." Conley simply failed to preserve any objections to the trial court's answer to the jury deliberation question. In the absence of a preserved objection, Conley asks this Court to consider his argument under the ends of justice and good cause exceptions to Rule 5A:18's contemporaneous objection requirement.

"The Court may only invoke the 'good cause' exception where an appellant did not have the opportunity to object to a ruling in the trial court; however, when an appellant 'had the opportunity to object but elected not to do so,' the exception does not apply. *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011) (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)). Conley has failed to demonstrate good cause for his failure to object to the trial court's response to the jury deliberation question, and we find that the good cause exception does not apply to these circumstances.

"'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (*en banc*) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220-21 (1997)). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt*, 66 Va. App. at 210 (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). "In order to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Id.* (quoting *Redman*, 25 Va. App. at 221). Conley asserts that

there is error because he was entitled to a jury instruction on consent. As discussed, *supra*, we disagree. This assignment of error is, therefore, barred from consideration by Rule 5A:18.

### 6. *Sodomy instruction listing rape elements*

Conley's final assignment of error is to the sodomy jury instruction, which incorrectly instructed the jury that the Commonwealth must prove "That the penis of the defendant penetrated into the *female sex organ* of [J.M.]," instead of the *anus*. (Emphasis added). Although Conley did not timely object to the incorrect sodomy instruction, he again asks this Court to consider his argument under the ends of justice exception to Rule 5A:18.

It is undisputed that the jury was misinstructed on the elements of sodomy, which requires proof of cunnilingus, fellatio, anilingus, or anal intercourse.[6] "By omitting this element from the jury instructions, the trial court failed to inform the jury 'as to the essential elements of the offense.'" *Lewis v. Commonwealth*, 28 Va. App. 164, 172 (1998) (quoting *Darnell*, 6 Va. App. at 488). We find this omission to be error.

Our analysis does not end, however, with our conclusion that the trial court erred. We next consider whether this omission constitutes reversible error. "The United States Supreme Court has repeatedly stated that harmless error analysis is appropriate in the context of improper jury instructions." *Kil v. Commonwealth*, 12 Va. App. 802, 812 (1991) (citing *Rose v. Clark*, 478 U.S. 570 (1986); *Sandstrom v. Montana*, 442 U.S. 510 (1979)). "Thus, '[w]here a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed.'" *Id.* (quoting *Rose*, 478 U.S. at 579) (citing *Harris v. Commonwealth*, 134 Va. 688, 695 (1922)).

---

[6] Anal intercourse is the only form of sodomy alleged in this case and supported by the evidence.

In this case, the evidence presented at trial included video footage of the defendant inserting his penis into J.M.'s anus while she was sleeping. Her eyes are closed, and she is quiet and still during the penetration. Approximately two minutes and fifty-one seconds into the video, after Conley urinates on her, J.M. appears to wake up. She rolls over and, as Conley covers up the camera, she groggily says "ow, ow," and "that hurts." Given the jury's finding of physical helplessness in every charge it considered, including its finding of physical helplessness pursuant to the incorrect sodomy instruction, as well as the video evidence and testimony supporting that conclusion, we hold that the record developed at trial established beyond a reasonable doubt that Conley is guilty of sodomy of J.M., accomplished through use of her physical helplessness. We, therefore, find that the trial court's failure to properly instruct the jury on the element of penetration of the anus was harmless error beyond a reasonable doubt, and accordingly fails to meet the "ends of justice" exception to Rule 5A:18. *Phoung v. Commonwealth*, 15 Va. App. 457, 466 (1992).

## CONCLUSION

For the foregoing reasons, we affirm the convictions for two counts of rape, two counts of object sexual penetration, and one count of sodomy.

*Affirmed*.