# Richmond

## W. S. ALLEN v. COMMONWEALTH OF VIRGINIA.

October 7, 1938.

Present, All the Justices.

The opinion states the case.

*T. Warren Messick,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

The defendant, W. S. Allen, was indicted for maliciously wounding T. J. Saunders. From the evidence it appears that he struck Saunders with a shovel and broke his arm. He has been tried, convicted and sentenced to two years in the penitentiary.

Both of these men are past middle age and are substantial citizens. In 1936 they were partners in the operation of a sawmill. Out of that partnership differences arose, enmities were engendered, and the partnership came to an end. In January, 1937, Saunders undertook to haul a load of lumber from this mill along a county road and which at one point ran over Allen's land. Allen was then at work upon it. Evidence varies as to what immediately preceded the encounter and what then occurred. It took place on January 28th. On February 1st, this letter was written, sent and received:

"Monday-Morning
"Feb the 1st 1937

"Dear Uncle Peirce
"Just a line or two leaves all very well hope you all are well Uncle Peirce I got Into a little Scrap & have knocked

the Thunder out of a fellow & I want you to come over Just as soon as I get this as I want you to help me work a trick or two as I know you are good at that. I will get my Trial friday morning & you see we havent much time. Looking for you at ONCE.

"As ever SEAMIE"

It purports to have been written by the accused but was actually written by his wife and at the trial was admitted in evidence over his protest. He contends that Code, section 6211, forbids its introduction.

So far as this case is concerned, that statute merely tells us that the wife cannot be compelled to testify against her husband. It has no application here. Any letter which might have been written by anybody, unless done with the consent of the accused, would be inadmissible. If it was in fact written at his instance, it is admissible because it is in substance his letter.

He tells us how it came to be written:

"Q. * * * Wasn't she writing the letter to try to get you out of the jam that you are in?

"A. I said I knew she wrote a letter but I didn't know what she wrote.

"Q. She didn't tell you?

"A. No, sir.

"Q. You didn't ask her?

"A. I told her to write and tell Uncle Peirce to come over.

"Q. What did you tell her to write and tell Uncle Peirce to come over for?

"A. I told her to tell him that I had got in some trouble.

"Q. And he came over?

"A. Yes, sir.

"Q. You have told us everything that is in that letter except about the tricks, what tricks was he to work?

"A. Not a thing.

"Q. What were you asking him to come over for?

"A. I got him to come over and help me in any way to gather evidence and one thing and another."

And again:

"Q. Now on February 1, 1937, was a letter written to your Uncle Pierce Allen over in Bedford, who lives in Thaxton, Virginia?

"A. My wife said she wrote a letter.

"Q. You and your wife discussed the thing, didn't you?

"A. Yes, sir. We discussed it before she wrote it.

"Q. What was the discussion before she wrote it?

"A. She told me she was going to write it."

At another time, he was asked:

"Q. Did you ask her to write to him to get some evidence for you?

"A. I don't know whether I asked her or she made the suggestion that she was going to write to him?

"Q. Did you okeh it and say, go ahead and write it, that it would be all right?

"A. I don't remember whether I did or not."

The conclusions that it was written at his instance and that he had knowledge of its contents are inevitable.

Of its own motion, the court gave this instruction:

"The court instructs the jury that the defendant is presumed to be innocent until his guilt is established. by the evidence beyond a reasonable doubt, and this presumption of innocence, unless and until rebutted by the evidence, 'if so rebutted,' goes with the defendant throughout the trial, and applies at each and every stage thereof; and if upon consideration of the whole evidence the jury have a reasonable doubt of the defendant's alleged guilt, it is the duty of the jury to resolve that doubt in favor of the defendant, and find the defendant not guilty."

■ .The presumption of innocence is a continuing one ʻand step by step keeps pace with the progress of the case, to be balanced ʻagainst evidence of guilt throughout the trial. · Its protective covering is not stripped away until the jury, evidenced by its verdict, has reached the conclusion · that guilt has been established. "That burden is continuous, · and can never be imposed upon the accused, although the evidence may shift from one side to the other, to meet the varying exigencies of the trial." *Potts' Case* (*Potts* v. *Commonwealth*), 113 Va. 732, 73 S. E. 470, 471.

"One charged with crime is presumed to be innocent, and that presumption follows him throughout every stage of the trial." *Canter* v. *Commonwealth*, 123 Va. 794, 96 S. E. 284, 287.

"The presumption of innocence attends an accused person at every stage of the trial until his conviction, and the prosecuting attorney should respect that presumption." *Mohler* v. *Commonwealth*, 132 Va. 713, 111 S. E. 454, 460.

In *Sims* v. · *Commonwealth*, 134 Va. 736, 115 S. E. 382, 388, this instruction was approved:

"The court instructs the jury that the prisoner is presumed to be innocent of the crime charged against him until his guilt is established by the evidence beyond every reasonable doubt, and the court further ·instructs the jury that this presumption of innocence goes with the prisoner throughout the entire trial, and applies to every stage thereof."

This Virginia rule finds elsewhere ample support:

"The presumption of innocence does not cease upon the submission of the cause to the jury, * * *." *People* v. *McNamara*, 94 Cal. 509, 514, 29 P. 953, 954.

It "should continue to have its ̇ logical weight in the case, not only during the taking of the testimony, but during the deliberations of the jury until they have arrived at a verdict." *Monaghan* v. *State*, 10 Okl. Cr. 89, 97, 134 P. 77, 80, 46 L. R. A., N. S., 1149.

"All persons are presumed to be absolutely innocent of a crime charged against them, in its entirety, and in all its

material parts, until the jury finds to the contrary on proper instructions, based on competent and relevant testimony." *Cook* v. *State,* 85 Miss. 738, 38 So. 110, 111.

To the same effect is *McKee* v. *State,* 198 Ind. 590, 154 N. E. 372.

"But the presumption of innocence never ceases throughout the trial, but goes, with all the evidence, to the jury for consideration." Wharton's Criminal Evidence, Tenth Edition, Vol. 1, p. 627.

This rule, which is our rule, is, however, not universal.

In *Commonwealth* v. *Madeiros,* 255 Mass. 304, 151 N. E. 297, 300, 49 A. L. R. 962, the court said:

"This presumption is not evidence. It does not run with the defendant through the trial and continue with him through all its stages. Requests of that nature were denied rightly."

We adhere to our rule which is, as we have seen, amply supported.

If this presumption applies at every stage of the trial and goes with the evidence to be weighed by the jury in reaching a verdict, then at no stage thereof is it rebutted. It may, in the ultimate judgment of the jury, be overborne by evidence, but that is all. This qualification of settled law is both misleading and erroneous.

Other complaints as to instructions are without merit.

Since this cause must be retried, we shall not undertake to discuss the evidence. That would only be proper if, upon it, no other verdict, save that of "not guilty," could properly be reached.

If this were the case, the prosecution should be dismissed.

For error noted, the judgment of the trial court is reversed, and this case is remanded to it.

*Reversed and remanded.*