## Salem

NORMA JEAN DARNELL

v.

COMMONWEALTH OF VIRGINIA

No. 0141-87-3

Decided July 5, 1988

COUNSEL

Gary L. Lumsden, for appellant.

Virginia B. Theisen, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.** — Norma Jean Darnell was convicted by a jury of involuntary manslaughter in the death of a police officer and sentenced to eight years in prison. She appeals that conviction on two grounds: (1) the jury was improperly instructed on the elements of the offense, and (2) the evidence was insufficient to support a conviction.

In the early morning hours of April 12, 1986, appellant arrived at her home in Roanoke. She checked her answering machine and found sixteen messages from Darrell Hensley, a man she had dated twice. Appellant called Hensley and told him to stop calling her. About ten minutes later, a drunk and argumentative Hensley came through appellant's back door into her house. Appellant talked Hensley into going outside to talk; when he was out she slammed the door, locked it, and called the police. The dispatcher's tape revealed that appellant told the dispatcher to send someone right away or "he's gonna get hurt real bad." Hensley began hitting the door and yelling. Appellant got her .32 caliber

revolver from the bedroom, went back to the kitchen door, and cocked the pistol. She again called the police dispatcher who assured her that the police were at her house. She then looked through the peephole and confirmed that officers were present and had Hensley in custody. She opened the kitchen door, with the gun still in her hand and the barrel pointing outside. In her statements and at trial, she testified she was going outside to identify herself as the person who had telephoned the complaint. As she opened the screen door, the door hit her hand, causing the gun accidentally to discharge. A bullet hit one of the officers about seven feet away, fatally wounding him.

Appellant was arrested and tried for involuntary manslaughter. After the evidence was concluded, the judge instructed the jury as follows (Instruction No. 2):

The Commonwealth must prove beyond a reasonable doubt each of the following elements of [the crime of involuntary manslaughter]:

(1) That the defendant killed David W. Rickman; and

(2) That the killing, although unintended, was the direct result of negligence so great as to show a reckless disregard of human life; or that the killing, although unintended, was in the prosecution of some unlawful, but not felonious act, specifically reckless handling of a firearm so as to endanger the life, limb or property of any person.

He further informed the jury (Instruction No. 3) that the negligence involved in the crime must have been criminal negligence, and it must have been "reckless or wanton and of such a character as to show disregard of the safety of others under circumstances likely to cause injury or death."[1]

---

[1] Instruction No. 3. The court instructs the jury that the gist of involuntary manslaughter is criminal negligence; it must be shown that the negligence of the defendant was gross or culpable negligence; culpable or gross negligence is that which indicates a callous disregard of human life and of the probable consequences of her act; criminal liability cannot be predicated upon every act carelessly performed merely because such carelessness results in the death of another, but in order for criminal liability to result from negligence, it must necessarily be reckless or wanton and of such a character as to show disregard of the safety of others under circumstances likely to cause injury or death; and unless you

Appellant's complaint with respect to the jury instructions relates solely to the portion of Instruction No. 2 regarding violation of a statute as grounds for involuntary manslaughter. She argues that under the instructions given, the jury could convict her of involuntary manslaughter if they found that she committed the unlawful act of reckless handling of a firearm and death resulted. Pointing out that not every violation of a statute can be a predicate for involuntary manslaughter because the violation must manifest a callous disregard for human life, she argues that the jury should have been instructed that the violation of the statute must have involved criminal negligence. Appellant notes that the instruction requiring a finding of criminal negligence did not vitiate the problem since under the instructions, no finding of negligence was necessary to convict on the violation of the statute theory.

The Commonwealth concedes that a mere violation of any statute will not suffice to support a conviction but argues, at least impliedly, that when the statute proscribes inherently dangerous conduct, such as reckless handling of a firearm, to establish criminal negligence the Commonwealth need only show that a violation of the statute proximately caused the death. In other words, the Commonwealth argues that reckless handling of a firearm necessarily includes the concept of criminal negligence. It then argues that even if recklessness equivalent to criminal negligence is an element, in this case, the requisite recklessness was inherent in the violation of the statute. Therefore, there was no need to require an additional finding of recklessness. Finally, the Commonwealth argues that if Instruction No. 2 was incomplete, the error was remedied by Instruction No. 3 requiring a finding of gross and culpable negligence.

■ A reviewing court's responsibility in reviewing jury instructions is "to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Swisher v. Swisher*, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982). It is elementary that a jury must be informed as to the essential elements of the offense; a correct statement of the law is one of the " 'essentials of a fair trial.' " *Dowdy v. Commonwealth*,

believe from the evidence beyond a reasonable doubt that the defendant was guilty of negligence so culpable or gross as to indicate a callous disregard of human life and of the probable consequences of her act, you cannot find her guilty of involuntary manslaughter.

220 Va. 114, 116, 255 S.E.2d 506, 508 (1979) (reversing conviction due to trial court's failure to instruct the jury as to the essential elements of the crime) (citations omitted) (emphasis omitted).

■ Generally, jury instructions that set forth the essential elements of the crime are patterned on the definition of the crime. As a common law crime, involuntary manslaughter is defined not by statute, but in caselaw. "Involuntary manslaughter is the killing of one accidentally, contrary to the intention of the parties, in the prosecution of some unlawful, but not felonious, act; or in the improper performance of a lawful act." *Mundy v. Commonwealth*, 144 Va. 609, 615, 131 S.E. 242, 244 (1926). "Improper performance" has been held to require criminal negligence " 'so gross and culpable as to indicate a callous disregard of human life.' " *Beck v. Commonwealth*, 216 Va. 1, 4, 216 S.E.2d 8, 10 (1975) (quoting *Goodman v. Commonwealth*, 153 Va. 943, 952, 151 S.E. 168, 171 (1930)). Appellant, citing *King v. Commonwealth*, 217 Va. 601, 231 S.E.2d 312 (1977), contends that the same criminal negligence is also essential when the charge is based on violation of a statute or "in the prosecution of some [other] unlawful, but not felonious act."

In *King,* the court reversed an involuntary manslaughter conviction that was based on the defendant's violation of a statute requiring vehicles to display lighted head lamps at night. The court noted that although it had held previously that a death proximately caused by driving while intoxicated constituted involuntary manslaughter,

> [o]ther statutory violations do not necessarily fall into the same category, depending upon the nature and extent of the offenses. Inadvertent acts of negligence, without recklessness, while giving rise to civil liability, will not suffice to impose criminal responsibility . . . . Intentional, willful, and wanton violation of safety statutes, resulting in death, however, will justify conviction of involuntary manslaughter.

*King*, 217 Va. at 606, 231 S.E.2d at 316; *see also Jenkins v. Commonwealth*, 220 Va. 104, 107, 255 S.E.2d 504, 506 (1979) (failure to keep proper lookout and driving left of center insufficient to support conviction); *Lewis v. Commonwealth*, 211 Va. 684, 687-88, 179 S.E.2d 506, 509 (1971) (failure to keep a proper lookout insufficient to support a conviction). Recently, this Court cited

*King* in holding that the failure to keep a proper lookout, failure to use reasonable care, and failure to stop and yield the right of way, though all statutory violations, were insufficient to support a conviction because, standing alone and under the facts of that case, they did not constitute negligence "so gross, wanton, and culpable as to show a reckless disregard of human life." *Tubman v. Commonwealth*, 3 Va. App. 267, 275, 348 S.E.2d 871, 875 (1986).

The Commonwealth argues that the *King* rationale of requiring a violation of a statute to be criminally negligent is limited to violations of motor vehicle statutes. Citing *Bailey v. Commonwealth*, 5 Va. App. 331, 362 S.E.2d 750 (1987), to support this proposition, it points out further that in *Bailey*, this court held that "[a] violation of Code § 18.2-56.1(A) (the reckless handling of a firearm statute), unlike most safety statutes dealing with the operation of motor vehicles, contemplates an inherently dangerous act. Where, as here, the intentional violation of the statute involves an inherently dangerous act which is the proximate cause of the resulting homicide, the killing is involuntary manslaughter." *Id.* at 334-35, 362 S.E.2d at 751. Therefore, argues the Commonwealth, the violation itself of the reckless handling of a firearm statute imputes the requisite callous disregard of human life; an additional finding of recklessness is unnecessary.

We disagree with the Commonwealth's characterization of *Bailey*. On appeal, Bailey argued that the evidence was insufficient to support a conviction; he did not argue that the jury was improperly instructed. Assuming, as we must, that the jury was properly instructed, *Bailey* stands merely for the proposition that a defendant who intentionally pulls a loaded gun from his pocket and points it at the victim sitting on the ground five to ten feet away while "playing stuff" or "horse playing" properly could be found guilty of an "unlawful act committed with *criminal negligence* constituting involuntary manslaughter." *Bailey*, 5 Va. App. at 336, 362 S.E.2d at 752 (emphasis added). The *Bailey* court plainly required criminal negligence to support the conviction; although the decision distinguished the kind of statutory violation from the kind at issue in *King*, we do not read *Bailey* to declare that every statutory violation of reckless handling of a firearm resulting in death constitutes involuntary manslaughter.

■ We find no justification for requiring criminal negligence in cases of involuntary manslaughter by motor vehicle but not in cases of involuntary manslaughter by shooting. *See State v. Kernes*, 262 N.W.2d 602 (Iowa 1978). "In the absence of a controlling statute, we are persuaded that there should be but one standard of conduct applicable in these involuntary manslaughter cases. Culpable conduct should require proof of recklessness, that is, conduct evidencing either a willful or wanton disregard for the safety of others." *Id.* at 605. We hold that criminal negligence is an essential element of involuntary manslaughter and a jury must be instructed to that effect.

Having decided that criminal negligence is an essential element of involuntary manslaughter, we address the Commonwealth's primary contention that the required negligence is inherent in the violation of reckless handling of a firearm. The Commonwealth asserts that violation of the statute imputes the requisite callous disregard of human life, and argues that the jury must have found appellant guilty of the unlawful act of "*reckless* handling of a firearm so as to endanger the life, limb or property of any person." Thus, by nature of the charge, the jury must have found recklessness.

■ The difficulty with the argument is that the recklessness involved in reckless handling of a firearm may or may not equate with the "recklessness" involved in criminal negligence. The meaning of "reckless" varies significantly depending on who uses it and in what circumstances. In laymen's terms, "reckless" means "lacking in caution." *Webster's Third New International Dictionary* 1896 (1981). In legal terms, the definition depends on the context; what is "reckless" behavior in tort law may not be so construed in criminal law.

> Reckless. Not recking, careless, heedless, inattentive; indifferent to consequences. According to circumstances it may mean desperately heedless, wanton or willful, or it may mean only careless, inattentive, or negligent. For conduct to be "reckless" it must be such as to evince disregard of, or indifference to, consequences, under circumstances involving danger to life or safety of others, although no harm was intended.

*Black's Law Dictionary* 1142 (5th ed. 1979).

■ In the firearm statute, the term "reckless" is not defined. At this point, however, we are not prepared to hold that the "reckless" handling of a firearm is limited to a handling "so gross, wanton or culpable as to show a reckless disregard of human life." Likewise, we are not prepared to redefine the elements of the crime of involuntary manslaughter, as the Commonwealth would have us do, by adopting the term "reckless" as synonymous with the long-standing definition of criminal negligence: conduct so gross and culpable as to indicate a callous disregard of human life. Therefore, the fact that a jury determines that a defendant violated the statute prohibiting the "reckless" handling of a firearm does not necessarily imply that they have also determined that he or she did so with a callous disregard for human life. The question whether a defendant acted with the requisite mental state is an essential question for the jury; it cannot be removed from them by the fortuitous use of the word "reckless" in the statute violated. *See Mayo v. Commonwealth*, 218 Va. 644, 648, 238 S.E.2d 831, 833 (1977) ("A violation of the reckless driving statute [driving at a speed or in a manner so as to endanger life, limb or property. Code § 46.1-189] does not constitute felonious negligence unless it is 'so flagrant, culpable and wanton as to show utter disregard of the safety of others under circumstances likely to cause injury' ").

The Commonwealth argues further that any alleged deficiency in Instruction No. 2 was cured by Instruction No. 3 since it instructed the jury that they could not convict the defendant unless they believed beyond a reasonable doubt that she was guilty of gross and culpable negligence. In determining whether jury instructions are proper, we must read and consider them all together. *Bowman v. Commonwealth*, 174 Va. 461, 465, 5 S.E.2d 497, 499 (1939). Although Instruction No. 3 was not on its face limited to the negligence theory of involuntary manslaughter, it related specifically and solely to the degree of negligence required for a conviction. While negligence was essential to the first theory of involuntary manslaughter as defined in the jury instructions, the second theory was based solely on the prosecution of some unlawful act with no mention of negligence. With no connection between "reckless" and "negligent," and with no definition of "reckless," the jury could have understood the criminal negligence instruction to relate only to the first theory of criminal liability, and thus could have convicted the defendant on the mere violation of the statute. We, therefore, hold that the trial court should have

instructed the jury that the defendant's violation of the statute must have involved criminal negligence as defined in Instruction No. 3, and that the failure to do so was not harmless error.

Finally, appellant argues that the evidence was insufficient to sustain her conviction. If the evidence is insufficient, principles of double jeopardy bar a retrial and the reviewing court must direct a judgment for acquittal. *Burks v. United States*, 437 U.S. 1 (1978). Having reviewed the evidence, we cannot conclude that it is legally insufficient so that "no other verdict save that of 'not guilty' could properly be reached." *Allen v. Commonwealth*, 171 Va. 499, 504, 198 S.E. 894, 897 (1938). Therefore, we reverse and remand this case for a new trial.

*Reversed and remanded.*

Koontz, C.J., and Moon, J., concurred.