COURT OF APPEALS OF VIRGINIA

Present: Judges Raphael, White and Senior Judge Petty
Argued at Richmond, Virginia


MATTHEW SCOTT CHAPMAN

                                            MEMORANDUM OPINION* BY
v.       Record No. 0514-22-2                JUDGE STUART A. RAPHAEL
                                                  AUGUST 15, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LANCASTER COUNTY
R. Michael McKenney, Judge

Charles E. Haden for appellant.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Matthew Scott Chapman appeals his convictions of second-degree murder, shooting in

the commission of a felony, and use of a firearm in the commission of a felony. Chapman

contends that the evidence showed that he killed the victim in self-defense, so the trial court

should have granted his motion to strike. He also attacks the jury instruction on shooting in the

commission of a felony, arguing that it permitted him to be convicted without proof of mens rea.

Finding neither claim meritorious, we affirm.

                                      BACKGROUND

"Consistent with the standard of review when a criminal appellant challenges the

sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the

Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74

Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

requires that we "discard" the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Chapman married K.C. ("wife") in 2018, but in January 2020, Chapman "assaulted and injured" wife and the couple separated. Chapman pleaded no contest to assault and battery of a family member in the Lancaster County Juvenile and Domestic Relations District Court. The sentencing order prohibited personal contact between them "except by reasonable email or texts" and "upon mutual agreement." The order also prohibited Chapman from entering wife's property on Beach Road in White Stone, Virginia. During their separation, wife lived at the Beach Road residence while Chapman lived in a rental property with his son. Wife and Chapman continued to communicate with each other to manage a business that they owned together.

Sometime during the separation, Chapman found out that wife was dating J.C.G. ("victim"). Wife told Chapman at some point that victim had wanted to marry her. On March 3, 2020, Chapman asked victim's ex-girlfriend if victim drove "a grey chevy with a . . . dog box in back." The ex-girlfriend responded, "Last time I knew he drove a blue ford." On March 15, victim visited a friend. While victim and the friend were out, the friend's wife saw Chapman drive slowly by the house and turn around in a neighbor's parking lot.

On March 16, Chapman approached a cook at a local restaurant, showed her a photo of Chapman's wife, and asked if she had seen her there with a man. The cook said no, and when Chapman asked to befriend the cook on Facebook so she could update him if she saw wife, the cook refused.

After three months of dating, wife broke up with victim on March 16, 2020. Wife and Chapman spent the nights of March 16 and 17 together, and wife told Chapman that she had ended her relationship with victim. But wife also told Chapman that she still wanted a divorce.

On the afternoon of March 18, victim texted friends, "I might go to jail," and "I didn't start [the drama]. But I will f***ing finish it." Wife's security camera then showed victim arriving and leaving wife's residence twice between 4:44 p.m. and 4:58 p.m.

Chapman arrived at wife's residence at 5:03 p.m. When wife told Chapman that victim had been there, Chapman asked why and if victim was upset with wife. Wife said that she and victim had returned each other's belongings and that victim was "okay," though he was crying, upset, and vomiting.

About ten minutes later, wife heard a car horn and looked out the window to see victim's truck. The security camera at the front of the residence recorded Chapman saying, "You better call 'em; you better call 'em." Police Lieutenant Tim Self testified at trial that, for Chapman's voice to have been captured, Chapman was likely inside, at the front of the residence. Wife testified that Chapman insisted that victim was "not going to come up in here." Knowing that Chapman "gets into altercations easily," wife implored Chapman, "Don't do this here. Don't go outside. Please just let me handle it."

Ignoring wife's pleas, Chapman grabbed wife's gun from the hallway table and went outside. As wife fumbled with her phone and caged her dogs, she heard yelling. She then heard (1) a gunshot, (2) Chapman say, "warning shot," and (3) a second gunshot. Wife went outside and saw Chapman standing with a gun in a gravel area, near a ramp leading to the back door. Victim sat on the sidewalk about ten feet from Chapman. Wife told Chapman to put down the gun and go to the neighbor's yard, which he did. Chapman told her that victim had been choking

him. Victim "laid back and started gurgling," and vomited. Upon seeing a gunshot wound to victim's stomach, wife yelled at Chapman and began CPR on victim.

Wife's next-door neighbor A.D. ("neighbor") also heard the gunshots. Neighbor, who knew both Chapman and victim, was at home when he saw victim arrive. Fearing that Chapman and victim would fight, neighbor went to his back door, which opens "at the fence" between wife's property and his own. On his way to the door, neighbor heard "a lot of yelling" and one gunshot. As he opened his back door, neighbor heard Chapman say, "[b]ack away," followed by a second shot. Neighbor then looked through his fence and saw Chapman and victim facing each other. As neighbor walked around the fence towards wife's residence, he saw Chapman at the bottom of the ramp and victim on the sidewalk. The two men did not appear to have moved since neighbor first saw them through the fence. Neighbor saw the gun in Chapman's hand and told him to put it on the ground by a tree, which Chapman did. Chapman said aloud, "[W]hat did I do?"

The police officers who arrived found one handgun in the yard and another on the deck railing. One gun belonged to Chapman, the other to wife.[1] The officers also recovered two shell casings, one near victim's right arm and the other on the sidewalk. Chapman told the officers that when victim approached him aggressively, he fired a warning shot into the ground and told victim to leave. Chapman said that victim kept approaching and wrestled with him and that Chapman shot victim when victim tried to strangle him. Chapman's clothes were not bloody, and a police photo showed no visible injuries to his neck. Several law-enforcement officers testified at trial that victims of strangulation typically have marks on their necks. The police found no weapon on victim's body.

---

[1] Wife and Chapman provided conflicting accounts about whose gun Chapman fired. Wife testified that after the shooting, she saw Chapman holding her gun in his hand. Chapman testified that he put wife's gun on the deck railing and used his own gun.

EMS personnel who responded to the scene pronounced victim dead at 5:48 p.m.  The autopsy confirmed that victim died from "an indeterminate distance gunshot wound to the right abdomen."  The toxicology report showed victim's blood alcohol content was approximately .08%.  Victim's fingernail clippings contained no DNA profile other than his own.

At trial, Chapman testified that he was outside at the bottom of the ramp when victim arrived.  He said that victim ran at him, screaming, "I got you now, bitch boy.  I'm going to f*** you up."  Chapman told victim to leave, and as victim approached, Chapman "pulled [his] gun and shot in the ground."  When victim did not stop, Chapman announced, "A warning shot."  Chapman testified that he was "petrified" and that as he backed up to the top of the ramp, victim "locked on" his neck and threw him off the ramp's handrail onto a trash can.  Chapman said that victim then choked him and that when victim reached back for what he thought was a weapon, Chapman "[c]losed [his] eyes and pulled the trigger."

The Commonwealth introduced evidence at trial to impeach Chapman's credibility.  In a jailhouse interview with a police detective, Chapman did not mention being strangled or thrown onto the trash can, or victim reaching for what Chapman thought was a weapon.  Chapman also told a fellow inmate that he shot victim after victim produced a knife.  On jailhouse phone calls to friends and family members, Chapman said that victim threw him to the ground.  And before April 18, Chapman did not mention strangulation but said that victim "locked up" with him.

Chapman twice moved to strike the murder charge on the ground that the evidence showed that he acted in self-defense, but the trial court denied both motions.  During the charging conference, the Commonwealth proposed the following jury instruction on the elements of shooting during the commission of a felony under Code § 18.2-53:

> (1) That the defendant shot . . . another person; and
>
> (2) That the shooting . . . occurred while the defendant was committing or attempting to commit a felony.

Chapman objected: "[I]t just sounds by the Court's reading . . . that this appears to be a strict liability crime for which no mens rea is necessary." The trial court overruled the objection, ruling that "the intent that is required is the intent to commit the [underlying] felony."

The jury convicted Chapman of second-degree murder,[2] use of a firearm in the commission of a felony, and shooting in the commission of a felony. The court sentenced Chapman to 48 years' incarceration, with 26 years suspended.[3] Chapman appeals.

ANALYSIS

Chapman asserts that the trial court should have struck the Commonwealth's evidence because it "failed to exclude the hypothesis" that he acted in self-defense. He also argues that the jury instruction about shooting in the commission of a felony permitted him to be convicted without proving mens rea.

A. Self-Defense (Assignment of Error I)

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193

---

[2] Chapman was indicted for first-degree murder; the jury convicted him of the lesser-included offense of second-degree murder.

[3] The court also ordered Chapman to pay restitution of $1,500 to the Virginia Victims Fund.

(2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"Self-defense is an affirmative defense to a charge of murder, and in making such a plea, a 'defendant implicitly admits the killing was intentional and assumes the burden of introducing evidence . . . that raises a reasonable doubt'" of his guilt. *Jones v. Commonwealth*, 71 Va. App. 70, 86 (2019) (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)). "'Whether an accused' meets this threshold 'is a question of fact.'" *Washington v. Commonwealth*, 75 Va. App. 606, 617 (2022) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). Virginia law recognizes two forms of self-defense: justifiable self-defense and excusable self-defense. *Id.* Both constitute a complete defense to a murder charge. *Jones*, 71 Va. App. at 94. *Justifiable* self-defense is reserved for when the accused is "*without any fault* on his part in provoking or bringing on the difficulty." *Washington*, 75 Va. App. at 617 (emphasis altered) (quoting *Avent v. Commonwealth*, 279 Va. 175, 199 (2010)).

The trial court here, with the agreement of both parties, instructed the jury only on *excusable* self-defense. Excusable self-defense

> occurs when the accused is at "some fault in the first instance in provoking or bringing on the difficulty" but, when attacked, he "retreats as far as possible, announces his desire for peace," and acts "from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm."

*Id.* (quoting *Bell v. Commonwealth*, 66 Va. App. 479, 487 (2016)). In short, Chapman needed to show that (1) he reasonably feared serious bodily harm or death, (2) an overt act or other circumstance made that harm imminent, and (3) he retreated as far as possible and announced his desire for peace. *Id.*

But the evidence here did not require the jury to resolve any of those elements in Chapman's favor. Chapman relies heavily on his own testimony that victim advanced on him, forced him up the ramp, threw him onto a trash can, choked him, and reached for what Chapman thought was a weapon. Yet the jury, which had "the unique opportunity to observe the demeanor of the witnesses as they testify," did not have to credit Chapman's testimony. *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)).

Indeed, much of Chapman's testimony was uncorroborated or conflicted with other testimony. Chapman claimed that he was outside when victim arrived, but wife testified that Chapman was inside the residence, where she implored him to stay put. The security footage, recording Chapman's voice inside at the front of the residence, corroborated wife's testimony, not Chapman's.

No other witness saw victim threaten, "charge," or strangle Chapman. Pictures of the yard, including the trash cans and several potted plants, did not show signs of a struggle. The officers found no evidence of ground disturbance, despite Chapman's claim that he fired the warning shot into the ground. Moreover, victim's fingernails contained only his own DNA. And even though strangulation typically leaves marks on the neck, the photographic evidence showed no marks on Chapman's neck.

Chapman's story was also inconsistent. When interviewed in jail by police, he did not mention being strangled or thrown onto the trash can, nor that he thought victim was reaching for a weapon. Later, after telling a fellow inmate that victim had a knife, Chapman admitted that he never saw victim with a weapon. While Chapman said in jailhouse phone calls that victim threw him to the ground, at trial, he said that victim threw him onto a trash can.

Wife and neighbor's testimony also contradicted significant aspects of Chapman's account. To be sure, wife heard Chapman say, "warning shot" after the first shot was fired; neighbor heard Chapman say, "[b]ack away." But that bare corroboration of Chapman's statements did not prove that Chapman shot victim to defend himself. Neither wife nor neighbor witnessed the shooting or saw victim's actions. And soon after the second shot, wife and neighbor both saw Chapman at the bottom of the ramp and victim on the sidewalk—a good distance from the trash can where Chapman said he shot victim.

Viewing the evidence in the light most favorable to the Commonwealth, we cannot say that a reasonable juror would have been compelled to conclude that victim committed an overt act that put Chapman in reasonable fear of imminent death or serious bodily harm, let alone that Chapman retreated as far as possible and announced his desire for peace before shooting victim to death. *See Jones*, 71 Va. App. at 95. A rational juror could infer from the totality of the evidence that Chapman acted out of anger, not fear, thus rejecting his claim of self-defense. Whether the defendant's alternative "hypothesis of innocence is reasonable is itself a [factual question] subject to deferential appellate review." *Bennett v. Commonwealth*, 69 Va. App. 475, 492 (2018) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). We see no basis to set aside the jury's verdict and therefore affirm the trial court's decision denying Chapman's motion to strike the evidence.

### B. Jury Instruction (Assignment of Error II)

Chapman also challenges the jury instruction on the elements of shooting in the commission of a felony. "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). We review a trial court's decisions in giving or

denying requested jury instructions for an abuse of discretion. *Id.* But we review de novo whether a jury instruction accurately states the law. *Id.*

Code § 18.2-53 provides, "[i]f any person, in the commission of, or attempt to commit, felony, unlawfully shoot, stab, cut or wound another person he shall be guilty of a Class 6 felony." The jury instruction on that offense explained:

> The defendant is charged with the crime of shoot, stab, cut or wound another person in the commission of, or attempt to commit, a felony. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1) That the defendant shot, stabbed, cut or wounded another person; and
>
> (2) That the shooting, stabbing, cutting or wounding occurred while the defendant was committing or attempting to commit a felony.
>
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the crime as charged, then you shall find the defendant guilty of shoot, stab, cut or wound another person in the commission of, or attempt to commit, a felony.
>
> If you find that the Commonwealth has failed to prove beyond a reasonable doubt either or both of the elements of the crime, then you shall find the defendant not guilty.

Jury Instr. 14.[4] Chapman asserts that the instruction "was inappropriate because it suggested that an inference of guilt could be drawn in the absence of any evil [intent] or mens rea." He says that the instruction "erroneously stated the applicable law and served only to confuse the jury."[5]

---

[4] The instruction did not include the statutory term "unlawfully" before the words "shot, stabbed, cut or wounded," but Chapman has not challenged its absence. We express no opinion on whether the omission of that word rendered the instruction erroneous. *See* Rule 5A:18.

[5] We find that Chapman adequately preserved this argument under Rule 5A:18 by objecting to the instruction during the charging conference on the ground that it "appears to be a strict liability crime for which no mens rea is necessary."

- 10 -

We are not persuaded.  We do not undervalue the "fundamental importance" of mens rea in our criminal-justice system.  *Clayton v. Commonwealth*, 75 Va. App. 416, 425 (2022) (Raphael, J., concurring).  But the jury instruction here did not dispense with the need to prove scienter.  The instruction required the Commonwealth to prove beyond a reasonable doubt that Chapman shot victim while committing or attempting to commit an underlying felony—namely, first-degree murder, second-degree murder, or voluntary manslaughter.  By convicting Chapman of second-degree murder, the jury found that his killing of victim was "malicious."  Jury Instr. 4.[6]  Thus, the malice required to prove second-degree murder sufficed to support Chapman's conviction under Code § 18.2-53 for shooting victim in the course of murdering him.

CONCLUSION

We find no reversible error in the trial court's denial of Chapman's motion to strike or in its jury instruction on shooting in the commission of a felony.

*Affirmed*.

---

[6] Our Supreme Court "has long employed a volitional definition of malice requiring that the 'wrongful act be done "willfully or purposefully."'"  *Flanders v. Commonwealth*, 298 Va. 345, 357 (2020) (quoting *Essex v. Commonwealth*, 228 Va. 273, 280 (1984)).  "[M]alice may be implied from use of a deadly weapon" when committing a homicide.  *Id.* at 358.