COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Ortiz and Chaney
Argued at Norfolk, Virginia

DEBRA LASHAY JOHNSON

MEMORANDUM OPINION[*] BY
v.      Record No. 1200-23-1                    JUDGE VERNIDA R. CHANEY
                                                 DECEMBER 30, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Stephen J. Telfeyan, Judge

Brett P. Blobaum, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Ryan Beehler, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Debra Johnson of malicious wounding

under Code § 18.2-51 and sentenced her to six years' incarceration with three years and nine

months suspended. Johnson argues on appeal that the trial court erred in (1) denying her motion

to strike the malicious wounding charge for insufficiency of evidence, (2) striking a juror for

cause, and (3) granting a "deadly weapon" jury instruction over her objections. Finding no error,

we affirm the circuit court's judgment.

BACKGROUND

On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On May 26, 2020, Alma Camacho was driving alone to the Food Lion on Bainbridge Boulevard in Chesapeake when she stopped at a nearby intersection. Johnson, driving an SUV, ran the stop sign at this intersection and nearly struck Camacho's vehicle. Immediately following this near miss, Camacho took a photograph of the back of Johnson's vehicle, including her license plate. Johnson then turned around and followed Camacho's vehicle to the Food Lion parking lot.

Camacho parked in the lot and began walking towards the store. Johnson then stopped her vehicle in the middle of the parking lot, got out, and ran toward Camacho yelling. Camacho continued walking with her back to Johnson, at which point Johnson ran up behind Camacho with a metal object and struck her three times in the left shoulder. Camacho testified that, as Johnson struck her, she continued yelling and called Camacho a "bitch" for taking the photograph of her license plate. Camacho never engaged or struck Johnson during this altercation but ran inside the Food Lion and told Johnson that she was going to call the police. Johnson then retreated to her own vehicle and drove "very, very slowly" past the front of the store. Camacho remained inside the store until the police arrived, at which point Johnson had left. Video of this incident, without audio, was captured on surveillance footage from the Food Lion parking lot.

As a result of the incident, Camacho's entire left shoulder turned purple with bruising that lasted three weeks; Camacho also struggled to lift heavy objects for two weeks. A photograph taken the day after the incident shows significant bruising to Camacho's left shoulder.

On June 11, 2020, Chesapeake police spoke to Johnson about the incident, and Johnson admitted to accidentally running the stop sign. Johnson claims that the other driver, Camacho, shouted and made hand gestures at her. Further, Johnson alleges that she drove to the Food Lion and that Camacho followed her to the parking lot where Camacho aggressively confronted her. Johnson first denied having any weapons, then later admitted to holding a "thing from the steering wheel" but denied having used the object as a weapon. While Johnson alleged that Camacho was the aggressor, she admitted telling Camacho in the parking lot that she was "going to beat [her] ass." Detective Juliee Hocutt testified that the police never identified the precise object that Johnson was holding.

Johnson was indicted for malicious wounding under Code § 18.2-51. During voir dire for trial, the Commonwealth asked a prospective juror about a response to a questionnaire she had previously filled out in which she stated that she does not like or trust police. The juror responded that her son had been prosecuted for a DUI and that she "feel[s] . . . motherly [about] it." When asked if she felt the police treated her son fairly, the juror responded that she felt like "the prosecutor went after him more than the police" and that "the prosecutor really wanted him to go down." The juror did state that she would try to be fair in this case but added that everyone has a "little bit of road rage" and did not "know" if someone should be prosecuted for it. Further, the juror told the Commonwealth that she was not sure if her son's experience would affect her ability to decide the case fairly, but ultimately stated that she would try to "keep an open mind" and "disregard her previous experiences" if the judge instructed her to do so. The Commonwealth moved to strike this juror for bias against the prosecution as found in her responses to the questionnaire and the Commonwealth's voir dire questions. Johnson objected, arguing that the juror indicated that she had not formed any opinion on the case, that she would "keep an open mind," and that she could decide the case according to facts and evidence. The

court found that the juror expressed bias against the Commonwealth and could not be fair and impartial in this case, and consequently granted the Commonwealth's motion to strike the juror for cause.

During jury instruction, the Commonwealth proposed an instruction informing jurors that they may infer an element of malicious wounding—namely, malice—from the deliberate use of a "deadly weapon." The instruction read as follows:

> You may, but are not required, to infer malice from the deliberate use of a deadly weapon unless, from all the evidence, you have a reasonable doubt as to whether malice existed. A deadly weapon is any object, not part of the human body, that is likely to cause death or great bodily injury because of the manner and under the circumstances in which it is used.

Johnson objected to this instruction on the grounds that the evidence is only sufficient to permit the jury to speculate as to whether or not the object used was a deadly weapon. Johnson argued that the object must be a "deadly weapon, not just a dangerous weapon." The court permitted the instruction, provided that the definition of deadly weapon was presented together with the instruction on malice.

At the close of evidence, Johnson moved to reduce the charge to misdemeanor assault and battery, arguing that there was insufficient evidence to prove that she had the requisite intent to kill or inflict permanent injury, as required for a malicious wounding conviction. The trial court denied this motion, and the jury convicted Johnson of the charged offense.

ANALYSIS

I. The trial court did not err in denying Johnson's motion to strike for sufficiency of the evidence.

Johnson argues that the trial court erred in denying her motion to strike the malicious wounding charge, asserting that the prosecution failed to provide sufficient evidence that the incident was conducted with malice. "[W]e review factfinding with the highest degree of appellate deference." *Commonwealth v. Barney*, 302 Va. 84, 96 (2023) (quoting *Bowman v. Commonwealth*,

- 4 -

290 Va. 492, 496 (2015)).  In criminal cases, evidence is reviewed in the "'light most favorable' to the . . . prevailing party in the trial court," which here is the Commonwealth.  *Id.* (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)).  This deference applies to both "matters of witness credibility" and "the factfinder's 'interpretation of all of the evidence, including video evidence' presented at trial."  *Id.* at 97 (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)).  "The factfinder 'views video and other evidence to determine what it believes happened; we, on appellate review, view . . . evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the [factfinder] did.'"  *Id.* (quoting *Meade*, 74 Va. App. at 806) (second alteration in original).  Thus, this Court does not say whether the evidence establishes the defendant's guilt beyond a reasonable doubt merely because it might have reached a different conclusion, but instead reviews whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

Under Code § 18.2-51, a person is guilty of a Class 3 felony if they "maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill."  Code § 18.2-51.  "To be guilty of malicious wounding, a person must also intend to permanently, not merely temporarily, harm another person."  *Perkins*, 295 Va. at 330 (quoting *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013)).  The element of malice can be found simply by the use of a deadly weapon, which is defined as a weapon "likely to produce death or great bodily injury from the manner in which it is used[.]"  *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020) (alteration in original) (quoting *Pannill v. Commonwealth*, 185 Va. 244, 254 (1946)).  A weapon may be classified as deadly based on "the manner in which it has been used" rather than "its intrinsic character."  *Id.* (quoting *Pannill*, 185 Va. at 254).  "Among other instruments which may under the circumstances of their use be regarded as deadly weapons

[include] . . . metal bars and rods . . . ." *Id.* at 507-08 (quoting *Pannill*, 185 Va. at 254) (alterations in original).

Nor does malicious wounding require that the wounding actually cause a permanent wound, so long as "the intent to produce it" exists. *Perkins*, 295 Va. at 330 (quoting 7 Ronald J. Bacigal, *Virginia Practice Series: Criminal Offenses and Defenses* 48 (2017-18 ed.)). "Intent is the purpose formed in a person's mind which may, *and often must*, be inferred from the facts and circumstances in a particular case." *Id.* (quoting *Burton v. Commonwealth*, 281 Va. 622, 626-27 (2011)). "The state of mind of an alleged offender may be shown by his acts and conduct." *Id.* (quoting *Burton*, 281 Va. at 627). The fact finder may also infer that "every person intends the natural and probable consequences of his or her acts." *Brown v. Commonwealth*, 74 Va. App. 721, 734 (2022) (quoting *Walker v. Commonwealth*, 47 Va. App. 114, 121 (2005)). Upon appellate review, "[w]hether an alternate hypothesis of innocence is reasonable is a question of fact, and therefore, is binding on appeal unless plainly wrong." *Fary v. Commonwealth*, 77 Va. App. 331, 344 (2023) (quoting *Lucas v. Commonwealth*, 75 Va. App. 334, 348 (2022)).

The jury is not required to accept any party's trial testimony; they are "free to believe or disbelieve, in part or in whole, the testimony of any witness." *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

Here, evidence gathered through testimony and video from the Food Lion parking lot proved that Johnson followed Camacho to the Food Lion parking lot after nearly colliding with Camacho's vehicle at a nearby intersection. Johnson exited her vehicle in the parking lot holding

something akin to a metal rod.[1] She then chased after Camacho, yelled at her, threatened to "beat [her] ass," and struck Camacho three times on the left shoulder with the metal object. There is no evidence proving that Camacho threatened or became physically aggressive with Johnson. Johnson's attack injured Camacho's shoulder, which sustained significant bruising visible for approximately three weeks and left Camacho unable to lift heavy objects for two weeks. The jury reviewed the testimony of both parties, watched Johnson's conduct on the Food Lion surveillance footage, and evaluated photographs submitted to evidence that documented Camacho's injury. They used this evidence to determine whether Johnson had the intent to cause permanent injury when she attacked Camacho. Based on the evidence, a jury could reasonably infer that when Johnson attacked Camacho using a metal weapon to strike her shoulder multiple times, she did so with intent to maim, disfigure, disable, or kill her. This is a reasonable factual finding that we uphold on appeal.

## II. The trial court did not err in striking the juror for cause.

Johnson argues that the trial court erred in striking the juror who noted during voir dire that, while she "would try" to remain impartial, she was "not sure" if her son's previous prosecution for a DUI would impact her view of the case. "The erroneous or improper exclusion for cause by the trial court of a venireperson does not violate a defendant's rights in a non-capital case . . . [so] long as the jury who hears the case is impartial." *McRae v. Commonwealth*, No. 0488-00-2, slip op. at 8, 2001 Va. App. LEXIS 392, at *8 (July 3, 2001).[2] The trial court's determination of whether a juror expressed bias is given great deference on appeal and "will not be disturbed on appeal unless there

---

[1] Parties refer to the object used by Johnson as both a "metal rod" and a "ratchet." The exact type of object used is unknown.

[2] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 572 n.7 (2018) (quoting *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012)); *see also* Rule 5A:1(f).

has been a manifest error amounting to an abuse of discretion." *Harvey v. Commonwealth*, 76 Va. App. 436, 454 (2023) (quoting *Townsend v. Commonwealth*, 270 Va. 325, 329-30 (2005)). Juror impartiality is a question of fact; the trial court's determinations on these issues are "'entitled to a great deference on appeal' unless 'plainly wrong or unsupported by the record.'" *Id.* (quoting *Huguely v. Commonwealth*, 63 Va. App. 92, 121, 127 (2014)). When reviewing a trial court's decision to strike a juror for bias, we consider "the juror's 'entire voir dire, not just isolated portions.'" *Id.* (quoting *Juniper v. Commonwealth*, 271 Va. 362, 401 (2006)).

In her questionnaire and during voir dire, the juror who was later struck from the jury pool made several statements indicating a bias against prosecutors and the Commonwealth. The juror recalled that her son was prosecuted for a DUI and believed that "the prosecutor really wanted him to go down." When asked twice whether this would "color" her view of the prosecution in this case, she admitted both times that she was not sure. She also expressed sympathy for Johnson, stating that everyone has "a little road rage" and that she did not "know" if someone should be prosecuted for it. Although she indicated that she would "try" to keep an open mind, she openly admitted her own uncertainty that she could review evidence impartially without considering her son's experiences. The many statements she made regarding both the defendant in this case and prosecution generally raised doubt as to her ability to remain impartial. Given her voir dire responses taken as a whole, the trial court's finding of bias was not "plainly wrong" as to overturn this ruling on appeal.

Upon an initial finding of bias, the juror may nevertheless be properly rehabilitated such that they may serve on the jury. *Harvey*, 76 Va. App. at 454. "Rehabilitation of a juror who has demonstrated bias requires more than just an assertion by the juror that he can be impartial." *Scott v. Commonwealth*, 58 Va. App. 265, 272 (2011) (citing *Gosling v. Commonwealth*, 7 Va. App. 642, 646 (1989). Proper rehabilitation involves reminding the juror of the relevant principles of law and

providing the juror with an opportunity to reconcile their own previous statements with such law, without being prompted by counsel. *See Bradbury v. Commonwealth*, 40 Va. App. 176, 183 (2003) ("If [the juror] then acknowledged she could apply this principle of law, then the trial court should have inquired how [she] could reconcile her previously stated views with the correct burden of proof. In this fashion, the juror could be rehabilitated using her own words to clarify her views . . . .").

After an initial finding of bias during voir dire, Johnson's attorney did not successfully rehabilitate the juror. The juror was not told that she must decide the case based only on the facts and evidence nor was she given an opportunity to reconcile her previous statements of bias with the principles of law at hand. Johnson's attorney instead asked a series of leading, yes or no questions to which the juror responded simply in the affirmative. *See David v. Commonwealth*, 26 Va. App. 77, 81 (1997) (finding that a trial court abused its discretion when a juror's rehabilitation consisted solely of the juror's "mere assent to the court's leading questions"). Accordingly, the trial court did not err in granting the Commonwealth's motion to strike the juror for cause.

III. The trial court did not err in allowing the jury instruction on the definition of a "deadly weapon."

Johnson objects to the trial court's jury instruction that permitted the jury to "infer malice from the deliberate use of a deadly weapon unless, from all the evidence, you have a reasonable doubt as to whether malice existed." Johnson does not argue that the instruction misstated the law, merely that no evidence existed to support the instruction at all. When reviewing jury instructions, it is the court's responsibility to "see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). The decision "in giving or denying jury instructions" is reviewed "under an abuse of discretion standard." *Id.* (citing *Gaines v. Commonwealth*, 39 Va. App. 562, 568 (2003) (en banc)). "A proffered jury instruction

'must be supported by "more than a scintilla" of evidence.'" *Id.* (quoting *Graves v. Commonwealth*, 65 Va. App. 702, 708 (2016)). "[T]he weight of the credible evidence that will amount to more than a mere scintilla of evidence is a matter to be resolved on a case-by-case basis." *Pinedo v. Commonwealth*, 72 Va. App. 74, 81 (2020) (alteration in original) (quoting *Williams v. Commonwealth*, 64 Va. App. 240, 247 (2015)).

The term "deadly weapon" is defined as a weapon "likely to produce death or great bodily injury from the manner in which it is used[.]" *Fletcher*, 72 Va. App. at 507 (alteration in original) (quoting *Pannill*, 185 Va. at 254). A weapon may be classified as deadly based on "the manner in which it has been used" rather than "its intrinsic character." *Id.* (quoting *Pannill*, 185 Va. at 254). "Among other instruments which may under the circumstances of their use be regarded as deadly weapons [include] . . . metal bars and rods . . . ." *Id.* at 507-08 (alteration in original) (quoting *Pannill*, 185 Va. at 254). In addition, the court defines "serious bodily injury" in the criminal context to mean bodily harm that is "fairly and reasonably . . . deemed not trifling, grave, giving rise to apprehension, giving rise to considerable care, and attended with danger." *McGowan v. Commonwealth*, 72 Va. App. 513, 519 (2020) (quoting *Nolen v. Commonwealth*, 53 Va. App. 593, 599 (2009)). "[A]n injury does not need to 'threaten near-certain death to be sufficiently serious' nor be incapable of recovery with proper treatment." *Tomlin v. Commonwealth*, 302 Va. 356, 365 (2023) (quoting *Tomlin v. Commonwealth*, 74 Va. App. 392, 405 (2022)).

Camacho testified, and the Food Lion video footage confirmed, that Johnson used a long metal ratchet to strike Camacho multiple times in her left shoulder. This incident caused significant bruising lasting three weeks and difficulty lifting heavy objects for two weeks. The manner in which Johnson used the metal ratchet to strike Camacho provided the "scintilla of evidence" necessary to justify the "deadly weapon" jury instruction. The responsibility then falls to the jury to determine whether the metal ratchet constituted a "deadly weapon" and, if so,

whether to infer malice from its use.  Therefore, the trial court did not abuse its discretion in permitting the "deadly weapon" jury instruction.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment on all counts.

*Affirmed.*